GEORGE F. HARDING, impleaded with H. M. WEAD,

*v.*

MARY LARKIN *et al.*

1. PRACTICE — *writ of error and appeal by the parties on the same record.* Held, that, under the practice in this State, a plaintiff may prosecute a writ of error, although the defendant has appealed from the same judgment, and one

of these proceedings does not affect the other, and both may progress at the same time.

2.   COVENANT *on warranty of title — damages — costs and attorneys' fees.* Where a grantee holding under a covenant of warranty is evicted, he may recover the purchase-money with interest, and the taxable costs and reasonable attorneys' fees expended in defending the suit in ejectment which resulted in the eviction ; but not so in a chancery suit brought to set aside a deed in the chain of title under which the covenantor claimed, when the covenantee was not a party to that suit.   The grantee can only recover such costs and reasonable attorneys' fees as accrued in the suit by which he was evicted.

3.   DEPOSITIONS — *of witness taken out of his county.*   It is not irregular to take the deposition of a witness residing in one county, in another county. It may be he was not bound to attend for the purpose, but having done so it is regular.

4.   EVICTION — *yielding to successful title.*   Where a party is sued in ejectment, and a recovery is had against him, he need not wait until actually expelled by legal process, but may yield to the superior title, purchase it, and maintain an action on the covenants in the deed of his grantor.   The law does not require the performance of useless acts.

5.   JUDGMENT — *in ejectment — what it establishes.*   Where the grantee holding a covenant of warranty, is sued in ejectment, and his grantor has notice of the suit, or becomes, as he may, a party to it, the recovery against his grantee is conclusive upon him that the title by which his grantee was evicted was paramount, and he will not be permitted to question the fact in an action by his grantee on the covenants in his deed.   But it would be otherwise if he had not received notice of the suit in ejectment, in which case the grantee must prove that the title was paramount.   The appearance of the covenantor as an attorney, to defend the ejectment suit, is evidence that he had notice.

6.   RECORD — *authentication of.*   Where the proper clerk certifies that a transcript of a record is a true and perfect copy of the original papers in the case, as fully as the same appear on the files and records then in his office, although informal, such a certificate is substantially sufficient to authenticate the record and entitle it to be read in evidence.   The papers pertaining to a cause became a matter of record by being filed in the proper office.

7.   DAMAGES — *measure of in covenant of warranty.*   When a grantee is evicted, and has been in the perception of rents and profits, and is not liable for *mesne* profits, he would not be entitled to recover interest on the purchase-money.   It then follows, that he may recover interest for the period for which he is liable for such profits, but for the time an action would be barred for such profits he cannot recover interest ; our statute having barred the recovery of such profits after five years, that is the period for which interest may be recovered in this action.

8.   SAME.   When the grantee is evicted, and purchases the title under which the recovery was had, and no recovery of *mesne* profits has been had,

the presumption will be indulged that they entered into and formed a part of the price paid for the superior title, and the grantee may recover interest for five years, as though *mesne* profits had been recovered.

9. EVICTION — *against a part of the heirs of the covenantee.* When a suit in ejectment has been brought against the grantee, and he dies during the pendency of the suit, and it is revived against his heirs, to whom his title descended, and it was omitted to make one of the heirs a defendant, and the suit progresses to a recovery against them, *held,* that this was such an eviction as authorized the heirs to maintain covenant on the warranty to their ancestor.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was an action of covenant brought by Mary Larkin, William Larkin, Joshua Larkin, Sarah Larkin, Eveline Larkin, James Larkin, John Larkin, Berzilla Larkin and Lydia Larkin by Joshua Larkin, their next friend, in the Cook Circuit Court, against George F. Harding and Hezekiah M. Wead. The declaration counts on the breach of a covenant of warranty contained in a deed of conveyance for a quarter section of land to Curtis Warden and Albert Warden, and that their father, by conveyance, became the assignee of their title and the covenant of warranty, and they succeeded to the same rights by the death of their father.

That defendants had not kept and performed their covenants, but had broken the same by suffering plaintiffs to be evicted from the land by paramount title. Pleas were filed and issues formed. A trial was had by the court and jury, who found the issues for the plaintiffs and assessed the damages at $967. Defendants entered a motion for a new trial which was overruled, and judgment rendered on the verdict. Plaintiffs bring the case to this court on error, and the defendants by appeal, and they assign errors on their several records.

Messrs. GOUDY & CHANDLER, for plaintiffs in error.

Messrs. HARDING & WEAD *pro se.*

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of covenant brought by plaintiffs in error, by their next friend, Joshua Larkin, in the Cook Circuit Court, against defendants in error, on a deed of conveyance containing covenants for title. The declaration avers, that defendants and their wives, on the 26th day of December, 1855, in consideration of six hundred dollars, by their deed of that date, sold and conveyed to Curtis Warden and Albert Warden, the south-west quarter of section thirty-three, township eight, north of the base line, in range two west of the fourth principal meridian ; and covenanting thereby that they would forever warrant and defend the title to said land against all patent titles whatsoever, and none other.

That, on the 2d day of February, 1856, Albert Warden and wife, for the consideration of two hundred dollars, sold and conveyed an undivided half of the north eighty acres of the quarter to Curtis Warden; and Curtis Warden, on the same day, on a like consideration, conveyed the undivided half of the south half of the quarter to Albert Warden; Albert Warden quitclaimed the south half to John J. Warden, for the consideration of $320, and on the 21st of September, 1857, Curtis, John J. and Benjamin F. Warden, for the consideration of $3,600, quitclaimed the whole quarter to Samuel Larkin. That he died, on the 25th of October, 1859, leaving plaintiffs his sole heirs, whereby they became invested with his claim to the premises, by descent.

That defendants have not warranted and defended the title against all patent titles whatsoever; but that after the death of Samuel Larkin, one Thomas Cross, by paramount patent title, conveyed to him by Archibald Williams, who derived the patent title from Robert Searles, to whom a patent had been granted by the United States Government, entered upon, and ejected plaintiffs therefrom, by due process of law, and kept and held plaintiffs so ejected, from the possession and occupancy of the land. And that plaintiffs have been obliged to

pay the costs and charges sustained in defending the ejectment suit brought by Cross, amounting to $100, and have been compelled to pay large sums of money, amounting to $300, in endeavoring to defend the suit in ejectment.

The second breach avers, that after Samuel Larkin's death, Cross, by virtue of his paramount patent title, on the 6th of April, 1863, evicted plaintiffs and kept them out of possession, whereby they lost the land, and have been obliged to pay costs and charges sustained in defending the ejectment suit, amounting to $100, and were compelled to pay other charges, in and about the defense of the ejectment, the sum of $300.

It is averred in the third breach, that, on December 4, 1865, Williams filed a bill in chancery, in the Warren Circuit Court, against James Searles and others, to set aside the title conveyed by defendants, in favor of another patent title granted Robert Searles, and conveyed to Williams, and that at the April Term, 1859, a decree was pronounced, upon the hearing of the bill, by which it was ordered and decreed, that the deed, by which defendants claimed title, should be set aside. That, on the 27th of June, 1859, Williams conveyed the land to Cross. That, on the 12th of July following, Cross brought a suit in ejectment, in the United States Court, for the northern district of Illinois, against Samuel Larkin, the father of plaintiffs. That defendant, Harding, appeared as attorney for Larkin, and filed a plea of not guilty. That while that suit was pending, Samuel Larkin died, leaving plaintiffs his heirs, who, as such, were made parties defendant. That Cross in that suit recovered a judgment for the land. That, under advice of counsel, plaintiffs prosecuted a writ of error to the Supreme Court, in the name of the Wardens and the defendants, with the knowledge and consent of the latter, to reverse that judgment, and necessarily paid seventy-five dollars costs, and $100 for attorneys' fees. That judgment was rendered against plaintiffs in the ejectment suit for costs and damages, and they were compelled to pay costs taxed in defense of the suit, seventy-five dollars, and $100 for attorneys' fees.

That, on the 7th of September, 1862, Cross conveyed the

premises to John H. Williams; that plaintiffs, by reason of the decree in favor of Archibald Williams, and the judgment in ejectment, were in danger of losing the land, and were compelled to purchase the title, and, for the consideration of $1,600, on the 25th day of December, 1862, paid by them, the land was conveyed by John H. Williams to John W. Larkin, for their use and benefit, whereby they were evicted and the covenant broken.

In the fourth breach, it is averred, that, on the 12th of July, 1859, Cross brought ejectment against Samuel Larkin, in the United States Circuit Court, for the recovery of the land, of which defendants had notice, and defendant Harding appeared in the case as an attorney for Larkin, and filed a plea of not guilty. And that, pending that suit, defendant Larkin, died, leaving plaintiffs his heirs at law, who were made defendants in that suit: that, in January, 1862, a judgment was rendered by the court against the defendants for the recovery of the land, and one cent damages, and a writ of possession was awarded to Cross for the premises; that the judgment by Cross was recovered by virtue of paramount patent title derived from the patentee; that, by reason of the judgment and decree in favor of Williams, plaintiffs were in danger of losing the land, and to avoid loss, were compelled to purchase the patent title from John Williams, to whom Cross had subsequently sold the premises, and that the conveyance was made to John W. Larkin, for their use and benefit, whereby they were evicted and the covenant broken.

On the 4th of January, 1866, defendant Harding filed three pleas to the declaration: First, a plea of performance, which avers that defendants did keep and fully perform their covenant; second, a plea of *non est factum;* and a plea of set-off of indebtedness by Samuel Larkin to defendant, for legal services as an attorney in the ejectment suit. Both defendants joined in a fourth plea, which is a plea of set-off for use and occupation of the premises. Plaintiffs filed replications to the first and second pleas, and a demurrer to the third and fourth pleas. The court sustained the demurrer to these pleas, and carried it

back and sustained it to the first, second and third breaches in plaintiffs' declaration. A judgment of *nil dicit* was thereupon rendered against defendant Wead, and a writ of inquiry awarded to assess the damages. A trial was afterward had under the issues on the first and second pleas, when the issues were found for plaintiffs, and the damages assessed against both defendants at $967. Defendants entered a motion for a new trial, which the court overruled, and rendered judgment on the verdict. To reverse that judgment, defendant Harding brings the case to this court by appeal. And plaintiffs also bring the case here on writ of error, to reverse the judgment of the court below in sustaining the demurrer to the first, second and third breaches of their declaration.

Inasmuch as both proceedings in this court are based upon the same record, and each party questions different decisions of the court below, made in the progress of the trial, for convenience, we shall consider the two cases as one. And in discussing the questions, shall first consider the errors assigned by plaintiffs in error. Before proceeding, however, to the main questions in the case, we shall first determine a question of practice involved in these records. It is objected, that, when one party prosecutes an appeal, the other is precluded from prosecuting error on the same record.

Our practice, unlike that of some other appellate jurisdictions, does not allow the assignment of cross errors on the record, in a proceeding at law. And as it may, and sometimes does occur, that, in the trial of a cause, errors may be committed against both parties, no reason is perceived why they may not have such errors corrected. The proper administration of justice requires that the parties should have such a right. The writ of error is a writ of right in all cases in which it will lie; and we are aware of no rule which holds that a party may be deprived of that right without his consent, and without any act on his part. It would be strange indeed if the acts of the opposite party, against his will and his interest, could deprive him of such a right, and that is all that the objection amounts to in this case. The writ of error is a writ of right, and lies for

either party on a final judgment; but the appeal in common law cases is purely a statutory remedy. They are concurrent in all civil cases, and may be prosecuted by either party. Or one may appeal and the other prosecute error from the same judgment, and on the same record.

The question whether the demurrer was properly sustained to the first three breaches in the declaration is the first error presenting itself on this record. It presents the question, whether a person holding land under a deed containing a covenant to warrant and defend the title, when sued for the land may defend the suit, and if unsuccessful, recover in covenant for taxable costs and attorneys' fees, necessarily paid in such defense. This question is now directly presented to this court for the first time for determination. It is however insisted, that it is settled by former decisions of this court, where it is said that the utmost extent to which the plaintiff can recover, is the purchase-money and interest. As to the increased value of the land, whether from its improvement or by a general rise in the price of lands, this is undeniably true. But those decisions were made alone with a view to that question. Such is the rule in perhaps all but the New England States, and yet in all the States, so far as we can find, where that rule prevails, and this question has arisen, except in New Jersey, taxable costs and reasonable attorneys' fees actually paid, have been recovered. See Rawle on Covenants, 95, and authorities there cited. The attorneys' fees in this suit are not, of course, recoverable as damages, but simply the costs and fees in the ejectment suit in which the eviction was had.

A person in possession yields to what he supposes to be a paramount title, at his peril. And holding a covenant from his grantor, that he will warrant and defend the title, it would seem, under the law, that the covenantee may defend for him, and, in fact, in some cases, must defend for him; and when he, in good faith, has done so, the taxable costs and attorneys' fees paid in such defense may be reasonably considered as a portion of the money paid for the title. It is paid to maintain what the grantor has affirmed by his covenant to be a perfect

title.   And as the law allows plaintiffs to recover these charges, it is upon the principle, that it is a portion of the purchase-money.   Plaintiffs were, therefore, entitled to recover for taxable costs and reasonable attorneys' fees, paid in defending the ejectment suit by which they were evicted.

But, as to the claim for costs and attorneys' fees in the chancery suit, brought by Williams against Lombard and defendants in error, we regard them too remote.   Appellees were not parties to that suit, and not being parties to it, we do not perceive that they can be allowed to recover for costs and expenses in prosecuting it in the Supreme Court.   Nor do we perceive that the consent of the appellants, that they might use their names, in so doing, can matter.   We have been able to find no case that has gone the length of holding, that costs and charges of any other than the suit by which plaintiff was evicted could be recovered.   The rule should be limited to the taxable costs and reasonable attorneys' fees alone in the suit. The court below, therefore, properly sustained the demurrer to the third breach, but erred in doing so to the first and second breaches.

We now come to the consideration of the errors assigned by appellants.   It is insisted, that the court erred in refusing to sustain the motion to suppress the deposition of John W. Larkin, because it is alleged to have been taken before appellant was served with process.   We have examined both transcripts of the record, and are unable to find any summons or return.   And we do not understand that the time when a summons was served can be proved by affidavit, even upon which to base a motion.   That should be proved by the return itself.   Again, it is urged that as the witness resided in Warren county, his deposition could not be taken in McDonough county.   If the witness voluntarily appeared before the officer at the time and place specified, no objection can exist on account of his residence in another county.   If, however, he refuse to attend, we are aware of no means by which his presence could be compelled by the officer taking the deposition.   We perceive no error in overruling this motion.

It is next urged, that there was not a sufficient eviction by paramount patent title proved to warrant a recovery. The ancestor of appellees was sued in the United States Circuit Court for the land, and he having died while that suit was pending, all of appellees but one were made defendants. The suit progressed to a judgment of eviction against them. They then yielded, and became the purchasers of the title by which they were evicted. It is true, that they were not actually dispossessed under process of the court. But, when the judgment was recovered, they were not required, under the law, to wait until they were turned out. The current of authorities will be found to hold, that, when the judgment has been rendered, establishing the adverse title to be paramount, the defendant may then purchase and recover on the covenant in his deed. The law never requires the performance of a useless act, and this would not only be so, but would involve unnecessary additional expense.

Then, what was the effect of the judgment in ejectment? It is the rule, that, where the covenantor is served with a proper notice of the commencement of the suit, or he has made himself a defendant in the suit, the judgment is conclusive. But, where he has not had notice, the *onus* is upon the plaintiffs in an action on the covenant to prove that the judgment was produced by an adverse paramount title. Then, does it appear in this case, that appellants had such a notice? We think it does. It appears from the transcript of the record, that appellant Harding appeared as an attorney in the case, and defended for his covenantee. This is ample evidence, that he had proper notice, or what he regarded as such. And, as Wead had permitted judgment to go against him on demurrer, the transcript of that judgment was proof of eviction by paramount patent title, when coupled with the decree in the case.

It is, however, insisted, that the transcript of the chancery record was not sufficiently authenticated to entitle it to be read in evidence. The clerk certifies, that the transcript is a true and perfect copy of the original papers in the case, as fully as the same appear from the files and records then in his office.

While this certificate is not formal, it is substantially good. The papers of a cause, when filed, under our statute, become a part of the record, as fully as if copied into the record book of the court. That act does not lend to them any additional force as parts of the record. Nor, are they generally even copied into the record book.

It is likewise objected, that the true measure of damages was not adopted, in computing interest on the purchase-money, paid by appellees' ancestor. That they being in possession of the premises, interest should not be allowed, as it should be presumed, that the use and occupancy of the land was equal to the interest on the purchase-money. This proposition is no doubt true with proper modifications. Where the purchaser is not liable for mesne profits, this has generally been regarded as the true rule. And it would then follow, that, for all of the time that an action for such profits is barred by the statute of limitations, interest could not be claimed, and should not be allowed. But when the party is liable to pay mesne profits, or has already paid them for a period for which they could have been recovered, then he should be permitted to recover interest for that period. And our statute has declared, that mesne profits shall be barred after five years.

The action to recover mesne profits, is by trespass *quare clausum fregit*, and only lies after a recovery in ejectment, to recover for the damage sustained by the owner in consequence of the wrongful entry and occupancy of the land from the time the entry was made until the recovery is had. Being an action of trespass, like the same action when brought to recover for any other injury, to real or personal property, it will be barred in five years after the action accrued. It cannot therefore matter how long a person may have occupied the premises before the eviction, the statute will bar a recovery for longer than five years. And in this action the jury will allow the reasonable rents and profits ; but they are not confined to these alone ; as they may give such damages as they deem right. The law, therefore, in covenant on a warranty, only permits the recovery of interest for five years next preceding the eviction,

as the plaintiff is liable for the mesne profits for that period of time; it only being in conformity with the rule that the use of the land is equal to the interest on the money paid for the land.

Our ejectment law has substituted a suggestion in the nature of the action for mesne profits, as a continuation of the same. And it is declared by the thirty-seventh section of that act, that "instead of the action of trespass for mesne profits heretofore used, the plaintiffs, seeking to recover such damages, shall, within one year after the entering of the judgment, make and file a suggestion of such claim, which shall be entered, with the proceedings thereon, upon the record of such judgment or be attached thereto, as a continuation of the same." Thus it appears that the action of trespass for mesne profits is abolished, and the damages must, if at all, be recovered by this suggestion.

But in this case no suggestions were filed within the year after the recovery was had. And it is therefore contended, that, as a recovery for mesne profits cannot be had, appellants are not liable for interest for any portion of the time prior to the recovery in ejectment. It, however, appears, appellees purchased of the plaintiff in ejectment within the year after the recovery. This being so, we must presume, that the liability of appellees entered into and formed a part of the consideration paid on that purchase. It is not to be supposed that the successful claimant of title would abandon his right to recover for mesne profits without consideration. We are therefore satisfied, that appellees under such circumstances are entitled to recover interest for five years previous to the eviction, as well as after that time until the recovery on the covenant. But in this case interest was allowed for a longer period, and the judgment was therefore to that extent erroneous.

It is also urged, that, inasmuch as there has been no recovery against Joshua Larkin in the ejectment suit, he has no right to recover in this action; that, as to him, there has been no eviction; but, he not having been made a defendant when that suit was revived, the omission to make him a defendant operated as a recovery by him in that action. We do not see how such omission could have that effect. Had he been

subsequently sued for his undivided interest, we do not understand that he could have set up the recovery against his co-tenants as a bar to such an action against him. The recovery against his co-tenants by a paramount title, to that held by him, from appellants, was such an assertion of paramount title as authorized him to yield to its pressure. Harding and Wead were parties to the suit in chancery by Williams against Lombard and others, in which the title conveyed to the ancestor of appellees was held to be void, and they were bound by the decree, and estopped from denying the title to be paramount. Hence, further resistance by Joshua would have been unavailing, and he had the right to yield and look to his father's covenantor for his portion of the purchase-money.

The judgment in the case, on the writ of error, as well as that on the appeal, must, for the reasons indicated, be reversed, and the cause remanded for further proceedings.

*Judgment reversed.*