JOSEPH A. THORSEN COMPANY *et al.*, Plaintiffs-Appellees, *v.* TOM R. EVANS, a/k/a T. R. Evans, a/k/a T. Milton Evans, a/k/a R. S. Fulton & Russell C. Nelsen, *et al.*, Defendants-Appellants.

First District (1st Division)    No. 79-649

Opinion filed March 31, 1980.

James Geis, of Geis & Geis, of Chicago, for appellant.

Arthur J. O'Donnell, of O'Donnell & Murphy, of Chicago, for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Tom R. Evans (defendant) has appealed from an order denying him relief pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72). Defendant sought relief from a portion of a judgment entered against him awarding Joseph A. Thorsen Company and James Cerny (plaintiffs) $65,200 compensatory damages and $50,000 punitive damages.

The pertinent facts are undisputed. Plaintiffs filed a fourth amended complaint in chancery against defendant and another party. Plaintiffs alleged defendant became an employee of Thorsen Company in April 1971. In May 1971, defendant represented himself to the Continental Illinois National Bank as an officer of Thorsen and established a land trust. The designated beneficiary of the land trust was "R. S. Fulton." This name was an alias used by defendant. Actually defendant was the beneficiary of the land trust.

Defendant submitted 18 separate offers for various parcels of land to the Continental Bank. He requested the bank to execute these offers in its trust capacity. All of these offers were made without the knowledge and consent of the Thorsen Company. One of these offers was to purchase a 360-acre parcel of land known as "Big Timber." That offer was accepted

by the seller. In due course an installment contract was executed for purchase of the Big Timber property by the land trust for $1562.50 per acre. Defendant then told the president of Thorsen he had a client named R. S. Fulton who was willing to sell the Big Timber property to Thorsen Company for $2062.50 per acre. Defendant further represented the price was sound and if certain zoning changes were made, R. S. Fulton would repurchase the property from Thorsen Company for $2350 per acre, thus assuring a profit. Thorsen authorized defendant to form an investment group to purchase the property. Defendant himself expressed a willingness to become an investor in the group and made an initial payment of $7411.80.

Plaintiffs' fourth amended complaint alleged defendant contacted numerous people and obtained funds from them. Some of these people intended their money to go into a different property investment, but defendant diverted the funds into the Big Timber project. These sums, together with the amounts invested by Thorsen and defendant, were tendered to the seller as a down payment on the Big Timber property. At this point, Thorsen became aware of defendant's scheme. Its representatives contacted all of the individual investors in Big Timber, informed them of what happened and offered to purchase their interests in the investment. Thorsen purchased an assignment of the interests of all the investors except plaintiff Cerny. The Thorsen Company made every installment payment, including interest, due under the contract and paid all real estate taxes relative to the property.

Plaintiffs further alleged that as a result of defendant's acts, he breached numerous and various duties to Thorsen by virtue of their employer-employee relationship and breached his fiduciary duties to the investment group to which both plaintiffs belonged. Plaintiffs sought the imposition of a constructive trust, so that the beneficial interest in the land trust would belong to plaintiffs, an accounting, general relief and punitive damages of $500,000.

Defendant filed no answer to the plaintiffs' fourth amended complaint. However, by his attorney of record, defendant had previously filed an answer to plaintiffs' second amended complaint. The case was scheduled for trial on August 15, 1977. Defendant failed to appear at trial. The trial court entered a default order against defendant on August 18, 1977. The case was continued "By agreement of the parties" to September 12, 1977. At this point, plaintiffs added Continental Illinois National Bank as trustee as a defendant to the action so the court could make a final disposition of the property contained in the trust. On September 12, 1977, defendant's counsel moved and was granted leave to withdraw because of his client's failure to appear. On September 16, a prove-up trial was held.

The trial court entered judgment on October 27, 1977, *nunc pro tunc* as of September 16, 1977, imposing a constructive trust for the benefit of plaintiffs. The beneficial interest in the land trust, as it relates to the Big Timber property, was transferred to plaintiffs. Also, judgment was entered against defendant for $65,200 in compensatory damages and $50,000 in punitive damages. Defendant's contribution of $7411.80 to the investment group was ordered retained by plaintiffs as partial satisfaction of the award of compensatory damages. Finally, defendant was to have no right to any commissions, fees, costs or reimbursements arising from the Big Timber property investment.

A supplemental order dated October 27, 1977, disposed of $12,000 which was being held in the land trust. The order directed the Continental Bank as trustee to take $7000 as trustee's fees and trustee's attorney's fees along with an additional $2000 to said Bank individually. The balance of the money in the trust was to be paid to Thorsen Company. The land trust was then dissolved.

On April 3, 1978, defendant filed a section 72 petition to vacate the judgment and supplemental order. The trial court denied this petition and defendant appeals.

In this court, defendant contends it was improper to award compensatory damages at an *ex-parte* hearing held after the order of default because defendant had no notice such relief was being sought. Furthermore, defendant urges since the compensatory damages were improperly awarded, no punitive damages should have been allowed. Plaintiffs contend only that the trial court did not err in denying relief under section 72 and the court had power to award compensatory and exemplary damages.

■■ ■ This court has recently stated (*Verson Allsteel Press Co. v. Mackworth Rees* (1st Dist., No. 78-487, filed February 13, 1980), ___ Ill. App. 3d ___, ___ N.E.2d ___):

"To warrant relief from a default judgment under section 72, the petitioner must affirmatively set forth facts revealing the existence of a meritorious defense and the exercise of due diligence in both presenting this defense and in filing the section 72 petition. [Citation.] Whether section 72 relief should be granted lies within the sound discretion of the trial court and its decision will not be disturbed on appeal unless there is an abuse of discretion. [Citations.] Section 72 is not intended to relieve a party from the consequences of his own mistake or negligence. [Citation.]" ___ Ill. App. 3d ___, ___.

We find no evidence in the record that defendant exercised due diligence in presenting his alleged defense or in filing the section 72 petition. Defendant was fully aware of this action against him as

evidenced by the fact that he filed an answer to previous complaints and his counsel did appear before the court. Defendant simply chose not to defend this action. A duty is imposed upon a litigant to follow the progress of his case. (*Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 311, 357 N.E.2d 518; *Illinois Marine Towing Corp. v. Black* (1979), 74 Ill. App. 3d 909, 913-14, 393 N.E.2d 707.) The unexplained delay of over 5 months between the entry of the trial court's last order in this matter and the filing of defendant's section 72 petition is inexcusable.

Defendant does not attempt to justify his complete lack of diligence. Instead, he urges the judgment against him for $65,200 in compensatory damages is void because defendant was not given proper notice prior to default that plaintiffs were seeking compensatory damages. If the judgment for compensatory damages is void, the "section 72 petition is not subject to an objection that the [defendant] did not show due diligence." (*Hoopingarner v. Peric* (1975), 28 Ill. App. 3d 53, 57, 328 N.E.2d 171, *appeal denied* (1975), 60 Ill. 2d 597, citing *Lake Shore Savings & Loan Association v. American National Bank & Trust Co.* (1968), 91 Ill. App. 2d 143, 234 N.E.2d 418.) However, in this type of collateral attack by a section 72 petition, "[t]he error of law must be apparent from an examination of the record, as the court cannot look into the evidence in the case * * * and in a chancery case that record is confined to the pleadings, process and decree." (*Collins v. Collins* (1958), 14 Ill. 2d 178, 183, 151 N.E.2d 813; see also *Jordan v. Jordan* (1976), 38 Ill. App. 3d 781, 783, 349 N.E.2d 116.) We have followed this rule of law in the instant case and have examined only the pleadings, process and decree to determine if the judgment appealed from is subject to collateral attack.

■■ Plaintiffs' fourth amended complaint asked for the imposition of a constructive trust, an accounting, general relief and punitive damages of $500,000 against defendant. As defendant points out, section 34 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 34), requires "[i]n cases of default, * * * the prayer of plaintiff's complaint limits the relief that may be granted unless defendant is given proper notice, prior to default, of any change." (*Klaisner v. Klaisner* (1975), 28 Ill. App. 3d 110, 113, 328 N.E.2d 341; see also *Dils v. City of Chicago* (1978), 62 Ill. App. 3d 474, 481-82, 378 N.E.2d 1130, *appeal denied* (1978), 71 Ill. 2d 607.) Therefore, the pertinent inquiry in this case is whether the award of compensatory damages was beyond the limits of relief prayed for in the complaint.

Defendant urges that *Dils* and *Klaisner* are controlling in the instant case. In *Dils*, the defendant City of Chicago unsuccessfully sought relief pursuant to section 72 from a judgment against it for $246,524. Plaintiff's complaint had demanded judgment against defendant for only $50,000. Defendant failed to appear at trial and the trial court held a default

hearing. The court entered an order for damages in the sum of $246,524, almost five times the *ad damnum* in the complaint. We concluded that pursuant to section 34 of the Civil Practice Act, "the instant judgment, a default judgment, is limited by the $50,000 *ad damnum*. * * * [A] party has a right to assume that the relief granted on a default will not exceed or substantially differ from that described in the complaint." (*Dils*, 62 Ill. App. 3d 474, 481-82.) Thus, we held the portion of the decree in excess of the *ad damnum* was subject to collateral attack.

*Klaisner* was also an appeal from the denial of defendant's section 72 petition. The plaintiff husband had filed a complaint for divorce. The complaint made no allegations with reference to alimony or the property of the parties. The prayer of the complaint sought only a divorce, custody of the children, and " 'other and further relief as this Court may deem just and equitable in the premises.' " (*Klaisner*, 28 Ill. App. 3d 110, 111-12.) Defendant failed to appear and a default hearing was held. The decree of divorce ordered defendant to execute a deed conveying her interest in the marital home to plaintiff and barred defendant from any alimony. This court held "the divorce court exceeded its authority by ordering the conveyance of defendant's interest in the marital home, which was first requested at the default hearing, without prior notice to the defendant. In doing so, the court rendered that portion of the decree void * * *." *Klaisner*, 28 Ill. App. 3d 110, 114.

It is our considered opinion *Dils* and *Klaisner* are distinguishable from the instant case and the relief awarded to plaintiffs here was not "beyond that prayed in the pleading." (Ill. Rev. Stat. 1977, ch. 110, par. 34.) In each of the two cases above discussed, the defendant had absolutely no notice from the complaint of the possible extent of the relief which the court subsequently granted. Thus, the defendant was "caused prejudice * * * by reason of surprise." (*Dils*, 62 Ill. App. 3d 474, 482.) However, in the instant case, there was no such prejudice because defendant did have adequate notice in the fourth amended complaint of the possibility of the imposition of compensatory and punitive damages.

This case was heard as a chancery matter. A court acting in equity should enter judgment adjudicating all matters in controversy to avoid multiple litigation and to do full and complete justice. (*Midway Tobacco Co. v. Mahin* (1976), 42 Ill. App. 3d 797, 807, 356 N.E.2d 909, *appeal denied* (1977), 65 Ill. 2d 577.) Also, plaintiffs' complaint sought an accounting in addition to other relief. In *County of Cook v. Barrett* (1975), 36 Ill. App. 3d 623, 633, 344 N.E.2d 540, *appeal denied* (1976), 63 Ill. 2d 555, this court stated:

> "When chancery exercises its exclusive jurisdiction to declare the [plaintiff's] equitable interest, it must then afford, as an incident, the complete remedy obtainable through an accounting. Where

equity has jurisdiction for the purpose of granting equitable relief, the court may determine all issues of the case, whether legal or equitable [citations] including damages."

■ Therefore, the prayer for an accounting in plaintiffs' fourth amended chancery complaint, as well as in plaintiffs' previous complaints, refutes defendant's claim that compensatory damages were beyond the limits of relief prayed in the pleadings. The trial court acted within its authority in ordering compensatory damages. The allowance of punitive damages was fully within the prayer of plaintiffs' complaint as amended and therefore was completely proper.

Finally, defendant also contends this court should vacate the supplemental order disposing of the $12,000 which was being held in the land trust because "it too exceeds the relief prayed for in the complaint." We disagree.

Defendant had ample notice from the fourth amended and other complaints that plaintiffs were seeking to impose a constructive trust on the beneficial interest in the land trust as it related to the Big Timber property. The trial court specifically found defendant had no right, title or interest in the Big Timber property being sold to the land trust and that "because of improper activity, conduct, and breach of his fiduciary duty with his employer, * * * no commissions, fees, costs or reimbursements are due and owing to [defendant]." Thus, the trial court found defendant had no interest whatsoever in the land trust; a conclusion which cannot be disturbed by this court.

Accordingly, the supplemental order of the trial court and the judgment appealed from are affirmed.

Judgment and supplemental order affirmed.

O'CONNOR and CAMPBELL, JJ., concur.