LESTER G. RAUSCHER *et al.*, Plaintiffs-Appellees, v. LAWRENCE N. ALBERT, Defendant-Appellant.

Fifth District   No. 5—85—0580

Opinion filed July 3, 1986.

Mary M. Albert, of Brighton, for appellant.

James E. Schrempf, of Alton, for appellees.

JUSTICE JONES delivered the opinion of the court:

Plaintiffs, Lester and Nancy Rauscher (grantees), brought the instant action to recover damages for an alleged breach of covenants in a warranty deed given by the defendant, Lawrence Albert (grantor). The complaint sought damages in the amount of $1,440 plus costs of the suit. The trial court entered summary judgment against the defendant on the issue of liability and, in a subsequent damages hearing at which the defendant did not appear, entered judgment for damages in the amount of $6,415.88, including attorney fees and costs. On appeal the defendant contends (1) that the trial court erred in entering judgment against the defendant in excess of the amount prayed for in the plaintiffs' complaint, where the defendant was in default as to appearance at the damages hearing and received no notice that additional relief had been sought, (2) that the trial court erred in awarding attorney fees to the plaintiffs in the absence of statute or contractual agreement, and (3) that the trial court erred in denying the defendant's motion to set aside the default judgment. We reverse and remand the cause for further pro-

ceedings.

On December 28, 1978, the defendant conveyed a tract of real property to the plaintiffs by warranty deed. At the time of the conveyance, the estate of Flora Maxeiner claimed title to a portion of the property conveyed under the doctrine of adverse possession. On November 13, 1981, the plaintiffs filed a two-count complaint against the estate of Maxeiner and defendant Albert. Count I of the plaintiffs' complaint sought to quiet title as to the subject property against the estate of Maxeiner, and count II sought damages from defendant Albert for breach of the covenants of title contained in the warranty deed. In count II the plaintiffs prayed for judgment in the amount of $1,440 plus costs of the suit and for "such other and further relief, or different, [sic] relief herein as the Court shall deem equitable and proper."

On November 4, 1983, the trial court entered summary judgment against the plaintiffs on count I, finding that the estate of Maxeiner had acquired title by adverse possession to the portion of property in question. The plaintiffs' quiet-title claim of count I was thus determined, and no appeal has been taken from that ruling. The plaintiffs then moved for summary judgment on the breach-of-warranty claim of count II, which had been answered by defendant Albert, and, following counteraffidavits and a memorandum in opposition to summary judgment filed by the defendant, the trial court granted summary judgment as to liability only against the defendant and in favor of the plaintiffs. The court ordered that the cause proceed to trial on the issue of damages alone and found that "as part of the damages to which plaintiffs are entitled to recover *** there shall be included reasonable attorney's fees and court costs incurred by plaintiffs in this matter."

The defendant subsequently filed a third-party complaint against James and Edith Long, who had conveyed the subject property to the defendant, and further filed requests for discovery from the plaintiffs concerning damages. After the damages hearing was set for December 17, 1984, the defendant's attorney communicated with the court, objecting that the case was not ready for trial because of the pending discovery requests. The court directed that motions concerning discovery be heard prior to the damages hearing and, on December 17, 1984, sustained the plaintiffs' objections to the discovery requests and ordered that the hearing on damages proceed *instanter*. Neither the defendant nor his attorney was present at the damages hearing on December 17, 1984. The court received evidence by the plaintiffs as to damages and entered judgment for the plain-

tiffs in the amount of $6,415.88, including $2,626.50 as attorney fees and $193.90 as costs.

On January 3, 1985, the defendant filed a motion to set aside the judgment by default, asserting that the defendant and his attorney were misled as to the scheduling of the damages hearing. The trial court denied the motion and this appeal followed.

On appeal the defendant contends initially that the trial court erred in entering judgment for damages in excess of the *ad damnum* clause of the plaintiffs' complaint, since the defendant was in default at the damages hearing and received no notice that additional relief had been sought. The defendant asserts that this was a violation of section 2—604 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—604), which limits the relief that may be granted in cases of default to that requested in the prayer for relief. The plaintiffs counter that the defendant's absence from the damages hearing did not constitute a "default" for purposes of section 2—604 and that, in any event, the relief granted by the trial court did not exceed that sought by the plaintiffs since their complaint contained a general prayer for relief in addition to the specific prayer for damages.

Section 2—604 (Ill. Rev. Stat. 1983, ch. 110, par. 2—604) provides in pertinent part:

"Every complaint and counterclaim shall contain specific prayers for the relief to which the pleader deems himself or herself entitled ***. Except in case of default, the prayer for relief does not limit the relief obtainable, but where other relief is sought the court shall, by proper orders, and upon terms that may be just, protect the adverse party against prejudice by reason of surprise. In case of default, if relief is sought, whether by amendment, counterclaim, or otherwise, beyond that prayed in the pleading to which the party is in default, notice shall be given the defaulted party ***."

■ It is settled that the purpose of requiring specific prayers for relief in a complaint is to inform the defendant of the nature of the plaintiff's claim and the extent of damages sought so that the defendant may prepare to meet the demand or permit a default to be taken against him. (*Forsberg v. Harris* (1960), 27 Ill. App. 2d 159, 169 N.E.2d 388; *Kryl v. Zelezny* (1937), 290 Ill. App. 599, 8 N.E.2d 223 (abstract of opinion); 2 C. Nichols, Illinois Civil Practice sec. 880, at 95 (1979).) While, under section 2—604, relief may be granted in excess of a specific prayer so long as appropriate measures are taken to prevent prejudice by reason of surprise, the inclu-

sion of a general prayer in a complaint does not serve to inform the defendant that such additional relief has been sought so as to protect the defendant from surprise. Rather, the purpose of a general prayer, under former equity practice, was to invoke the court's grant of equitable relief required in a given case (*County of Du Page v. Henderson* (1949), 402 Ill. 179, 83 N.E.2d 720; see *Pope v. Speiser* (1955), 7 Ill. 2d 231, 130 N.E.2d 507), and this practice was continued following the merger of law and equity, although such relief is now proper whether or not the complaint contains a general prayer (7 Ill. 2d 231, 130 N.E.2d 507; Ill. Ann. Stat., ch. 110, par. 2—604, Historical and Practice Notes, at 122 (Smith-Hurd 1983); see 7 Ill. L. & Prac. *Chancery* secs. 174, 439, 440 (1954)). In any event, a grant of relief in excess of that specifically prayed for requires that the court protect the adverse party from surprise, and, failing this, such a grant of relief cannot be justified on the grounds that the complaint contained a general prayer for relief. We thus find no merit in the plaintiffs' assertion here that the trial court's award of damages in excess of the specific prayer was warranted by the inclusion in the complaint of a general prayer for relief.

The plaintiffs additionally contend that section 2—604 limiting the award of damages to that specifically prayed for in cases of default is inapplicable to the instant case where the defendant appeared and defended the cause but failed to attend the damages hearing. The term "default" or "default judgment" is a term susceptible to different meanings in different contexts (see 26A C.J.S. *Default*, at 126-28 (1956)) and has been applied to a range of situations where judgment was rendered without a plenary adjudication of the issues (Restatement (Second) of Judgments, Introductory Note, at 152 (1982); see 4 C. Nichols, Illinois Civil Practice sec. 4135, at 222 (1980)). Thus, while "default" may refer to a failure to appear or plead, it has also been applied to situations where the defendant has appeared and defended the action but then, as late as the trial itself, has withdrawn and suffered judgment to be entered against him. As used in section 2—604, "default" has been said to refer to default for want of an appearance (see Ill. Ann. Stat., ch. 110, par. 2—604, Historical and Practice Notes, at 122-23 (Smith-Hurd 1983)); however, courts have not always made this distinction and have applied section 2—604 when judgment was entered following the defendant's absence at trial. See *Joseph A. Thorsen Co. v. Evans* (1980), 82 Ill. App. 3d 1119, 403 N.E.2d 666 (section 34 (now section 2—604) applied in instance of default entered upon defendant's failure to appear at trial); *Zabel v. Koran* (1975), 27 Ill.

App. 3d 579, 327 N.E.2d 49 (abstract of opinion): court found violation of section 34 (now section 2—604) in case of default entered when defendant failed to appear at damages hearing; *cf. Dils v. City of Chicago* (1978), 62 Ill. App. 3d 474, 378 N.E.2d 1130 (award of damages in excess of *ad damnum* of plaintiff's complaint improper under section 34 (now section 2—604) where default entered upon defendant's failure to appear at trial).

In *Zabel v. Koran*, similar to the instant case procedurally, a judgment for damages was entered against the defendant when he did not appear for trial after answering a complaint charging breach of a construction contract. Certain pretrial negotiations had been conducted before the court, resulting in an agreed order regarding immediate repair of the premises. The plaintiffs at that time sought $10,000 in actual damages and $5,000 in punitive damages. A trial was set to determine unresolved matters, and, when the defendant did not appear, the plaintiffs presented proof and obtained a judgment for $15,000 in actual damages and $3,000 in punitive damages.

In reversing the trial court's denial of the defendant's motion to set aside the judgment within 30 days, the *Zabel* court applied the provisions of section 34 (now section 2—604) relating to default judgments. The court stated:

> "It is fundamental that a defendant is entitled to know the precise charge that is laid at his door, the nature and extent of the relief sought, the property that is or may be affected and an opportunity to be heard. [Citation.] No such opportunity was afforded defendant in the present case. The *ad damnum* was amended in defendant's absence and without prior notice to him as required under section 34 ***." *Zabel v. Koran* (1975), 27 Ill. App. 3d 579, 327 N.E.2d 49 (abstract of opinion).

The court concluded that "in order to suitably comply with the intent of section 34" (abstract of opinion) and see that substantial justice was done, it was necessary to vacate the default judgment and compel the plaintiffs to try the case on the merits.

The reason behind the rule of section 2—604 has been similarly stated in other cases involving the defendant's default at various stages of the proceedings. In *Park Avenue Lumber & Supply Co. v. Nils A. Hofverberg, Inc.* (1966), 76 Ill. App. 2d 334, 345, 222 N.E.2d 49, 54, the court observed:

> "One has a right to assume that the relief granted on default will not exceed or substantially differ from that described in the complaint, and he may safely allow a default to

be taken in reliance upon this assumption."

This right, the court continued, is protected by section 34 (now section 2—604) so that, if relief is sought beyond that prayed for in the pleadings, the defaulting party should be notified of such change. Likewise, in *Ryan v. Miller* (1978), 58 Ill. App. 3d 283, 286-87, 374 N.E.2d 257, the court remarked:

"How or to what extent a defendant may decide to respond to a claim may well depend on the amount demanded and if that demand be increased, the defendant should have the opportunity to reconsider whatever action he might propose to take."

Further, in *Dils v. City of Chicago* (1978), 62 Ill. App. 3d 474, 482, 378 N.E.2d 1130, 1136, the court noted the "prejudice[d] *** by reason of surprise" caused to a defendant when judgment is rendered without notice to the defendant of any increase in the *ad damnum.* Since, the court stated, the record in *Dils* reflected that the defendant city was aware that a default judgment had been entered, it had the "right to assume that $50,000, the amount of the *ad damnum,* was the maximum amount recoverable. Never having been notified of any increase in the *ad damnum,* the city was clearly prejudiced by reason of surprise when an amount of approximately $250,000 was awarded plaintiff." 62 Ill. App. 3d 454, 482, 378 N.E.2d 1130, 1136.

It can be readily seen that the reason for the rule of section 2—604 is equally applicable to the instant case even if, as the plaintiffs allege, the failure of the defendant to appear at the damages hearing was not a true default. Moreover, section 2—604 makes provision for the court to protect an adverse party "against prejudice by reason of surprise" whenever other relief is sought, whether or not a defendant's absence results in a default judgment. This provision, thus, constitutes a practical limitation on the court's ability to grant relief in excess of the plaintiff's *ad damnum.* (See Ill. Ann. Stat., ch. 110, par. 2—604, Historical and Practice Notes, at 122 (Smith-Hurd 1983).) In the instant case there was no indication to the defendant that the plaintiffs would seek damages greater than the $1,440 amount specified in the complaint, and we believe that the defendant was prejudiced by reason of surprise when judgment was entered for damages almost 2½ times that amount, excluding costs and attorney fees.

█ Because damages in excess of the *ad damnum* were awarded in the defendant's absence without notice to him that portion of the judgment in excess of the *ad damnum* is void and sub-

ject to attack in a motion to set aside the judgment. (See *Dils v. City of Chicago* (1978), 62 Ill. App. 3d 474, 378 N.E.2d 1130; *Klaisner v. Klaisner* (1975), 28 Ill. App. 3d 110, 328 N.E.2d 341.) In deciding such a motion, the overriding consideration is to insure that substantial justice is done under the circumstances and to determine the reasonableness of compelling the other party to try the case on its merits. (*People ex rel. Reid v. Atkins* (1971), 48 Ill. 2d 402, 270 N.E.2d 841; *Lettvin v. Suson* (1978), 62 Ill. App. 3d 215, 379 N.E.2d 49.) A reviewing court need not find as a matter of law that the trial court abused its discretion in denying the motion but must only resolve the questions of whether justice has been served. (62 Ill. App. 3d 215, 379 N.E.2d 49.) In the instant case where damages in excess of the *ad damnum* caused prejudice by reason of surprise when awarded in the defendant's absence, substantial justice requires that the judgment be set aside so that damages may be determined after the plaintiffs have properly amended their complaint and given the defendant notice of the increased *ad damnum*. (See *Zabel v. Koran* (1975), 27 Ill. App. 3d 579, 327 N.E.2d 49. (abstract of opinion).) We, therefore, reverse the trial court's award of damages and remand the cause for further proceedings on the issue of damages.

■ The defendant additionally contends that the trial court erred in awarding attorney fees to the plaintiffs in the absence of a statute or contractual agreement. (See *Third Establishment, Inc. v. 1931 North Park Apartments* (1981), 93 Ill. App. 3d 234, 417 N.E.2d 167 (attorney fees and ordinary expenses of litigation not allowable to successful party absent statute or contractual agreement).) As pointed out by the plaintiffs, however, there is a long-standing exception to this rule where, as here, a grantor of land breaches the duty owed to a grantee under a warranty deed. Where such a breach has occurred, the grantor is liable for attorney fees and costs that his grantee reasonably incurs in maintaining an unsuccessful defense against the outstanding interest holder. (*Harding v. Larkin* (1866), 41 Ill. 413; *National Bank v. Jack* (1948), 334 Ill. App. 186, 78 N.E.2d 805, see also *Rook v. Rook* (1903), 111 Ill. App. 398.) As explained in *Harding v. Larkin* (1866), 41 Ill. 413, 420-21, the grantee, holding a covenant from the grantor that he will warrant and defend the title, may defend for him,

> "and when [the grantee], in good faith, has done so, the taxable costs and attorney's fees paid in such defense may be reasonably considered as a portion of the money paid for the title. [These charges are] paid to maintain what the grantor

has affirmed by his covenant to be a perfect title[,]"
and, as such, may be recovered upon the principle that they are a "portion of the purchase money."

█ In the instant case, then, the plaintiffs are entitled to recover expenses, including attorney fees, that they incurred in their unsuccessful attempt to establish clear title against the estate of Maxeiner, which claimed superior title to the land in question under the doctrine of adverse possession. We perceive no difference except in a procedural sense between a grantee who brings suit to establish clear title and one who defends an ejectment action brought by a third party claimant. In making its award of attorney fees to the plaintiffs, however, the trial court failed to distinguish between expenses incurred in defending the title against the third-party claimant and additional expenses arising from the plaintiffs' action against defendant Albert for breach of covenants in the warranty deed. As stated in *Harding v. Larkin* (1866), 41 Ill. 413, 420, only the former expenses may be recovered by a grantee maintaining an unsuccessful title defense:

> "The attorneys' fees in this suit [to recover damages for breach of covenants in the deed] are not, of course, recoverable as damages, but simply the costs and fees in the ejectment suit in which the eviction was had."

In their motion for summary judgment, the plaintiffs sought recovery of both the attorney fees and costs incurred in maintaining an unsuccessful title defense and those incurred in the plaintiffs' action against defendant Albert under the covenants of the deed. The trial court awarded attorney fees at $2,626.50 without making a distinction between the two actions. Since the plaintiffs may recover only the attorney fees incurred in the action to quiet title against the estate of Maxeiner, the court is directed, upon remand, to redetermine the award of attorney fees to the plaintiffs subject to this limitation.

For the reasons stated in this opinion we reverse the judgment of the circuit court of Madison County and remand this cause for further proceedings.

Reversed and remanded.

KASSERMAN, P.J., and KARNS, J., concur.