Bruce OUTCALT and Deborah Outcalt, Appellants, Original Defendants and Third Party Plaintiffs below,

v.

John C. WARDLAW and Janet B. Wardlaw, Appellees, Third Party Defendants Below and Third Party Plaintiffs,

v.

Frances Harris, Appellee, Third Party Defendant Below,

and

Beulah Harris and Gary Harris, Nominal Appellees, Original Plaintiffs Below.

No. 60A01–0007–CV–224.

Court of Appeals of Indiana.

June 22, 2001.

Philip A. Sallee, Bloomington, Indiana, Attorney for Appellants Bruce and Deborah Outcalt.

John B. Wilson, Jr., Nashville, Indiana, Attorney for Appellees John C. and Janet B. Wardlaw.

William J. Beggs, Bunger & Robertson, Bloomington, Indiana, Attorney for Appellee Frances Harris.

## OPINION

SULLIVAN, Judge

Appellants, Bruce and Deborah Outcalt, challenge the trial court's entry of summary judgment in favor of Appellees, John and Janet Wardlaw and Frances Harris. The Outcalts present one issue for our review, which we restate as whether the trial court erred in determining that the grantor of a warranty deed cannot be liable for expenses the grantee incurred in successfully defending the warranted title.

The relevant facts are not in dispute. Beulah Harris owned a farm in Owen County (the Harris property), which is now owned by her son, Gary. Bruce and Deborah Outcalt are the current owners of a tract of land (the Outcalt property) adjacent to and immediately west of the Harris property. The Outcalts purchased their property from John and Janet Wardlaw by warranty deed on June 4, 1990. The Wardlaws had purchased the property from Fred and Frances Harris [1] by warranty deed on January 25, 1989.

The eastern portion of the Outcalt property adjacent to the Harris property contained an old fence. At the direction of Gary Harris, Mike Mundy surveyed the Harris property. Mundy's survey revealed that, according to the deed, the boundary line between the Harris property and the Outcalt property varied from thirty to forty feet east of the fence. In 1992, Beulah and Gary Harris filed suit to quiet title to this disputed strip of land, claiming paramount title by adverse possession. The Outcalts subsequently joined the Wardlaws as third party defendants, claiming that the Wardlaws were required to appear and defend the Outcalts' title. The Wardlaws, on the same grounds, joined Frances Harris as a third party defendant.

The trial court, reserving the issue of allocating the Outcalts' defense costs, quieted title to the disputed strip of land to the Outcalts. This judgment was upheld by this court in the memorandum decision *Harris v. Outcalt,* No. 60A01–9902–CV–62, 718 N.E.2d 1243 (October 20, 1999). Thereafter, on March 9, 2000, the trial court granted the Wardlaws' motion for summary judgment on the issue of the Outcalts' expenses in favor of the Wardlaws and Frances Harris.

▬ Summary judgment is appropriate only where the designated evidentiary material demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Jones v. Western Reserve Group/Lightning Rod Mut. Ins. Co.,* 699 N.E.2d 711, 713 (Ind.Ct.App.1998), *reh'g denied, trans. denied.* Upon appeal, we apply the same standard as the trial court, resolving disputed facts or inferences in favor of the non-moving party. *Id.* at 713. It is the moving party's burden to establish, prima facie, that no genuine issues of material fact exist and that he or she is entitled to judgment as a matter of law. *Chance v. State Auto Ins. Cos.,* 684 N.E.2d 569, 570 (Ind.Ct.App.1997), *trans. denied.*

---

1. Fred and Frances Harris are not related to Beulah and Gary Harris.

Only then does the burden fall upon the non-moving party to set forth specific facts demonstrating a genuine issue for trial. *Id.*.

Here, the Outcalts do not claim that there was a genuine issue as to any material fact. Instead, the Outcalts claim that the trial court erred in determining as a matter of law that they were not entitled to recover any expenses incurred in defending their title.

In support of their claim that the Wardlaws were required to reimburse them for the costs of defending their title, the Outcalts rely upon Ind.Code § 32–1–2–12 (Burns Code Ed. Repl. 1995). Section 12 provides, among other things, that the grantor of a warranty deed "will warrant and defend the title to the same against all lawful claims." *Id.* This is known as the covenant of warranty. *See* Jesse Dukeminier & James E. Krier, Property 735–36 (1981).

In *Worley v. Hineman,* 6 Ind.App. 240, 33 N.E. 260, 264 (1893), this court held that the "necessary expenses for defending one's title are properly allowed when it is shown that the covenantor had notice of the suit, or, which is the same thing, himself defended the action in the name of the grantee defendant." In *Worley,* the grantee/plaintiffs had paid approximately $2400 to subsequent grantees to cover the costs of redeeming a mortgage on the property which the grantor/defendant had failed to pay. *Id.* at 260–61. The court allowed the grantee/plaintiffs to recover expenses incurred in defending the title in addition to the amount they paid to the subsequent grantees. *Id.* at 264.

In *Rieddle v. Buckner,* 629 N.E.2d 860, 864 (Ind.Ct.App.1994), the grantees unsuccessfully defended their title against a claim of adverse possession. The *Rieddle* court determined that, because the adverse claimants were successful, and the grantors had refused to defend the title on behalf of their grantees, the grantors had breached their warranty. *Id.* Citing *Worley, supra,* and *Rauscher v. Albert,* 145 Ill.App.3d 40, 99 Ill.Dec. 84, 495 N.E.2d 149 (1986), the *Rieddle* court held that both "reasonable attorney's fees and expenses the grantee expended in defending title are recoverable from the covenantor for breach of warranty of title." *Id.*

The Outcalts contend that *Worley* and *Rieddle* support their claim that a grantor is liable for the expenses the grantee incurred in defense of the warranted title. However, in *Keilbach v. McCullough,* 669 N.E.2d 1052, 1054 (Ind.Ct.App.1996), this court held that when a grantee *successfully* defends title in the conveyed land, the grantor cannot be held liable for expenses incurred in defending the title. The trial court in the present case relied upon *Keilbach* in determining that the Outcalts could not recover expenses from the Wardlaws or Frances Harris. (Supp. R–4).

The Outcalts ask us to reject, modify, or distinguish *Keilbach,* claiming that it is inconsistent with the holdings of *Worley* and *Rieddle,* and I.C. § 32–1–2–12.[2] However, as noted above, the *Rieddle* court based its holding upon the fact that the grantors had breached their covenant of warranty as evidenced by the grantees' unsuccessful defense of their title. 629 N.E.2d at 864. Likewise, the grantor in *Worley* had breached the covenant of warranty by failing to redeem the outstanding mortgage on the property, forcing the subsequent grantees to do so. *Worley,* 33 N.E. at 260–61. The *Keilbach* decision is

---

**2.** The Outcalts note that *Keilbach* limited *Rieddle* narrowly to its facts and although it

questioned the *Rieddle* ruling itself, did not question or even cite the *Worley* decision.

therefore not inconsistent with *Worley* and *Rieddle*.[3]

■ Nevertheless, the Outcalts insist that I.C. § 32–1–2–12 requires the grantor to defend the title "against all lawful claims," and that Gary Harris's claim was a lawful, albeit unsuccessful, claim which the Wardlaws were statutorily required to defend. This seems to be a reasonable interpretation of I.C. § 32–1–2–12. However, it has long been held that the covenant of warranty is a future covenant which is not breached until the grantee is evicted from the property, buys up the paramount claim, or is otherwise damaged. DUKEMINIER & KRIER, *supra* at 736. "Nothing is more generally or more truly said than that 'An eviction is necessary to a breach of the covenants for quiet enjoyment and of warranty.'" WILLIAM HENRY RAWLE, COVENANTS FOR TITLE § 131 (5th ed. 1887). Because the covenant of warranty does not protect against every adverse claim, "the covenantee is not entitled to demand of his covenantor expenses incurred in the defense of a suit which sustains the conveyed title as valid." 20 AM. JUR. 2D *Covenants* § 139 (1995) (footnotes omitted); see also 21 C.J.S. *Covenants* § 60 (1990).

■ As noted by the New Hampshire Supreme Court in *Eaton v. Clarke*, 80 N.H. 577, 120 A. 433, 434 (1923), "Expenses incurred in defending against an unfounded claim cannot be recovered from those bound by the warranty. The fact that there is an apparent cloud upon the title is not enough. Its validity must be shown to establish a liability of the warrantor."[4]

■ Still, a grantee is not completely without recourse. "[W]here a covenantee is sued by one claiming under a paramount title, the covenantee may relieve himself of the burden of defending the suit by giving notice to his covenantor of the pendency thereof, and may thus cast upon the covenantor the duty of defending the title, and render him bound by the judgment." *Morgan v. Muldoon*, 82 Ind. 347, 352, 1882 WL 6187 (1882); *accord Eaton*, 120 A. at 434. This places the risk of a default judgment upon the grantor.

This may be of dubious comfort to the grantee. The risk of a default judgment might be upon the grantor in the sense that the grantor may be liable to the grantee for damages. However, the grantee in such a situation risks being evicted from land for which he or she purchased a warranty deed. Thus, a grantee who wishes to remain in possession of the land would be well advised to defend his title when the grantor elects not to do so. Conversely, a grantor given notice of a claim against the warranted property has little incentive to defend the warranted title. Should the grantor choose to defend his or her title, he or she will necessarily incur the expenses of this defense whether the claim is successful or not. Yet if the grantor chooses not to defend the title, he or she will be liable for the expenses only if the claim is successful.[5]

---

3. The Outcalts also seek to distinguish their case from *Keilbach* by noting that in the latter, the grantee brought suit to establish her title, whereas the Outcalts were sued by the adverse claimant. However, the *Keilbach* court specifically rejected this distinction, noting that although the grantee in that case had initiated the proceedings against the adverse claimant and was not literally "defending" her title, the adverse claimant's actions forced her to file a quiet title action to "defend" her title. 669 N.E.2d at 1053–54.

4. Use of the word "unfounded" in this context would seem to equate with "successful."

5. We decline to hypothetically create an additional litigation scenario to the process and suggest that a grantor who successfully de-

■ We recognize that the current state of the law gives little real choice to a grantee faced with an adverse claim and a grantor who refuses to defend thereon. Were we writing upon a clean slate, we might decide to provide grantees with more protection. However, given the *Keilbach* decision and the long line of authority supporting its holding, we feel bound to hold that, in the context of the covenant of warranty, a "lawful claim" necessarily means a successful claim.[6] If a change is to be made in this area of the law, it is for our Supreme Court to make.

■ Nevertheless, although a grantee who successfully defends his or her title generally may not recover expenses incurred in defending against the claim, he or she may recover such costs "if the wrongful act of the covenantor thrusts the covenantee into litigation with a third person." 21 C.J.S. *Covenants* § 60 (1990) (footnotes omitted). In the present case, however, there is no indication that the wrongful act of either the Wardlaws or Frances Harris thrust the Outcalts into the present litigation. The Outcalts do list in their statement of facts that Frances Harris filed an affidavit "in support" of Gary Harris's claim. However, this affidavit was never admitted into evidence at trial, nor is a copy of it included in the record. With no designated evidence demonstrating that either the Wardlaws or Frances Harris thrust them into the present litigation, the Outcalts may not recover expenses incurred in defending against Gary Harris's unsuccessful claim.

■ Separately, the Wardlaws claim that the Outcalts' appeal is frivolous, and for this reason request this court to assess damages and costs against the Outcalts pursuant to former Ind.Appellate Rule 15.[7] An award of damages under Rule 15 is discretionary and may be ordered when an appeal is replete with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Guzzo v. Goodrich Quality Theaters, Inc.*, 679 N.E.2d 166, 169 (Ind.Ct.App.1997), *trans. denied*. However, to avoid chilling an attorney's pursuit of novel theories or remedies, such damages should be awarded only when the contentions upon appeal are utterly devoid of all plausibility. *Id.* Although the Outcalts ask us to not follow the *Keilbach* decision, they did not fail to disclose this case to us. Nor is the Outcalts' appeal utterly devoid of all plausibility. We therefore decline the Wardlaws' request for damages and costs. *See Guzzo*, 679 N.E.2d at 169 (declining appellee's requests for appellate fees where appellant relied upon decision which had been expressly rejected by subsequent cases and failed to disclose this negative history to the court).

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and RILEY, J., concur.

---

fends grantee's title may then seek reimbursement of the costs from the grantee.

6. The Outcalts claim that the case of *Dickinson v. Bain*, 921 S.W.2d 189 (Tenn.1996) supports their position that, so long as the grantor is given notice of the claim, the grantee may recover costs and attorney fees from the grantor regardless of the claim's validity. However, in *Dickinson*, the grantees were unsuccessful in defending their title, and the issue before the court was whether attorney fees should be included in the grantee's award of damages. *Id.* at 191.

7. Because this appeal was initiated prior to January 1, 2001, it is governed by the former Indiana Rules of Appellate Procedure.