911 F.2d 374
 Prod.Liab.Rep.(CCH)P 12,571
John SMITH, Plaintiff-Appellant,
v.
CUTTER BIOLOGICAL, INC., A DIVISION OF MILES INC., Miles
Laboratories, Inc., Travenol Laboratories, Inc., Armour
Pharmaceutical Corporation, Alpha Therapeutics Corporation,
and United States of America, Defendants-Appellees.
 No. 89-15839.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 24, 1990.
 
 1
 Appeal from the United States District Court for the District of Hawaii; Samuel P. King, District Judge Presiding.
 
 
 2
 Before NELSON and TROTT, Circuit Judges, and TASHIMA, District Judge.*
 
 ORDER
 CERTIFIED QUESTIONS
 
 3
 John Smith appeals the grant of summary judgment in favor of the manufacturers of a blood clotting product, Factor VIII, and in favor of the United States. Smith claims that he acquired AIDS from manufacturer-appellees' products. The district court found that appellant could not prevail on his claims as a matter of law. We certify several questions of state law to the Hawaii Supreme Court.
 
 BACKGROUND
 
 4
 Appellant John Smith is a hemophiliac who has tested positive for the AIDS virus. He receives a clotting agent known as Factor VIII from Tripler Army Medical Center (TAMC). Factor VIII enables the blood of hemophiliacs to clot. Factor VIII is made and sold in the United States by the four appellees in this case, Alpha Therapeutic Corp. (Alpha), Cutter Biological (Cutter), Armour Pharmaceutical Company (Armour) and Baxter Hyland Healthcare Corp. (Baxter). Smith claims that he was infected with the AIDS virus from Factor VIII.
 
 
 5
 This case was originally filed in Hawaii state court and removed to federal district court. Smith sued the four manufacturers of Factor VIII for negligence and strict liability. In addition, Smith sued the United States for negligence and for failure of its duty to warn while he was treated at TAMC.
 
 
 6
 On May 18, 1989, the district court granted summary judgment in favor of defendants holding that Smith had failed to prove specifically which manufacturers' product caused his infection. The court also found that the United States was not liable because "until 1984 there was no medical consensus that AIDS was transmitted through blood." Smith v. Cutter, et al., Civ. No. 87-0891 at 8 (D.H. May 18, 1989). Therefore, Smith's treatment at TAMC was held not to have fallen below the proper standard of care.
 
 
 7
 Smith filed a timely appeal. In addition, he filed a motion to the Ninth Circuit to certify two questions of Hawaii state law to the Hawaii Supreme Court pursuant to Haw.R.App.P. 13. Because this case presents important state law issues of first impression, we grant appellants' motion to certify these issues to the Hawaii Supreme Court.
 
 DISCUSSION
 I. THE HAWAII BLOOD SHIELD LAW
 
 8
 Like most states, Hawaii has a Blood Shield Law protecting the donors and preparers of "blood or component[s] thereof" from liability except for their "own negligence or willful misconduct". Haw.Rev.Stat. Sec. 327-51. Manufacturer-appellees argue that the statute precludes Smith from bringing a claim for strict liability. Smith claims, in response, that since Factor VIII is manufactured from plasma that is altered and treated it does not come within the mandate of the Blood Shield Law. Therefore, Smith argues, he is not precluded from bringing a strict liability claim against the manufacturers.
 
 
 9
 In addition, appellees argue that the Blood Shield Law precludes Smith from bringing negligence claims against the Factor VIII manufacturers without proof of individual causation. They claim that the use of the words "own negligence" in the statute bars a lawsuit in which the specific tortfeasor who caused injury to appellant cannot be identified. Smith argues that if the Blood Shield Law does apply to Factor VIII it explicitly allows negligence claims, including the negligence claims in this lawsuit.
 
 
 10
 We do not think it is appropriate to substitute our judgment on the interpretation of a Hawaii statute for the judgment of the Hawaii Supreme Court. Since the questions of whether Hawaii's Blood Shield Law permits claims in negligence or claims in strict liability have never been presented in this manner to the Hawaii Supreme Court, we certify them for the Court's interpretation.
 
 
 11
 II. THEORY OF RECOVERY WITH SEVERAL POSSIBLE TORTFEASORS
 
 
 12
 It may never be possible to prove which of the four manufacturers supplied the Factor VIII that lead to Smith's infection with the AIDS virus. It has been at least seven years since Smith became infected and he does not remember specifically which products he used. In all likelihood, he used Factor VIII manufactured by more than one of the manufacturer-appellees in this suit.
 
 
 13
 Most states have developed legal theories to resolve tort cases in which there are several possible tortfeasors but no clearly responsible party.[1] The Hawaii Supreme Court has neither adopted nor rejected any of these theories. Neither has the Hawaii Supreme Court adopted an alternative approach or rejected any approach that would allow liability without proof of the actual tortfeasor, i.e. individual causation.
 
 
 14
 We recognize that Smith's infection with the AIDS virus is an extraordinary tragedy. We note, however, that the issue presented in this case is a basic tort question: when it is impossible to prove which, of several negligent actors, caused plaintiff's injury, how should liability be determined? Since this is a important issue in the development of Hawaii tort law, we feel that the Hawaii Supreme Court is the most appropriate forum for its resolution. We therefore certify this issue to the Hawaii Supreme Court.
 
 CONCLUSION
 
 15
 We certify the following questions to the Hawaii Supreme Court:
 
 
 16
 (1) Does Hawaii's Blood Shield Law, Haw.Rev.Stat. Sec. 327-51, preclude Smith from bringing a strict liability claim?
 
 
 17
 (2) Does Hawaii's Blood Shield Law, Haw.Rev.Stat. Sec. 327-51, preclude Smith from bringing a negligence claim?
 
 
 18
 (3) Would Hawaii allow recovery in this case when the identity of the actual tortfeasor cannot be proven? If Hawaii would allow recovery, what theory (i.e., burden-shifting, enterprise liability, market share or other) would the Hawaii Supreme Court adopt?
 
 
 19
 We respectfully request the Hawaii Supreme Court to exercise its discretionary authority under Haw.R.App.P. 13 to accept and decide these questions. Our phrasing of the questions should not restrict the court's consideration of the problems and issues involved. "The court may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties." Toner v. Lederle Lab., 779 F.2d 1429, 1433 (9th Cir.1986). If the Hawaii Supreme Court decides that the issues presented in this case are inappropriate for certification, or if it declines the certification for any other reason, it should state so and we will resolve the issues according to our understanding of Hawaii law.
 
 
 20
 The Clerk will file a certified copy of our Order with the Hawaii Supreme Court under Haw.R.App.P. 13. This panel retains jurisdiction over further proceedings in this court. The parties will notify the Clerk within one week after the Hawaii Supreme Court accepts or rejects certification, and again within one week after the court renders its opinion.
 
 
 21
 IT IS SO ORDERED.
 
 
 
 *
 Honorable A. Wallace Tashima, United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 There are essentially three types of approaches that have been developed by other states. In the classic approach of Summers v. Tice, 33 Cal.2d 80, 199 P.2d 1 (1948), the California Supreme Court held that if several defendants act negligently and it is not possible to determine which defendant caused plaintiff's injury, the burden shifts to defendants to prove that they did not cause the injury. Under the second approach, the enterprise liability theory, if the plaintiff can prove that an entire industry was negligent the burden shifts to the members of that industry to prove that they did not supply the specific product that caused the injury. Hall v. E.I. Du Pont, 345 F.Supp. 353 (E.D.N.Y.1972). Finally, the California Supreme Court in Sindell v. Abbott Lab., 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (Cal.1980), cert. denied, E.R. Squibb & Sons, Inc. v. Sindell, 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980), held that when it was impossible for a plaintiff alleging injury from a drug taken while her mother was pregnant to prove which of the numerous manufacturers produced the drug her mother consumed, each manufacturer would be responsible for a percentage of the recovery matching its share of the market for the drug