572 So.2d 979 (1990)
Mahmoud Fathi MAHMOUD, Individually and Doing Business As Baraka International and American Tri-Corp International, Inc., a Florida Corporation, Appellants,
v.
INTERNATIONAL ISLAMIC TRADING (IIT), LTD., a Bahamian Corporation, Appellee.
No. 89-2923.
District Court of Appeal of Florida, First District.
December 19, 1990.
Rehearing Denied January 29, 1991.
Parker B. Smith, Ponte Vedra Beach, for appellants.
Waddell A. Wallace, III, and William W. Deem, Jacksonville, for appellee.
SMITH, Judge.
Appellants appeal a final judgment against Mahmoud Fathi Mahmoud (Mahmoud), individually or doing business as Baraka International, in the sum of $5,296,636.76, and against American Tri-Corp International, Inc. (Tri-Corp) in the sum of $622,133.95. The final judgment was entered *980 after the trial court struck appellants' pleadings for failure to abide by court-ordered discovery. The amounts in the final judgment represent principal sums and "profits," which are described as charges for financing. We agree with appellee that the order striking pleadings, which amounted to a default judgment against appellants, was not an abuse of discretion and that the award of liquidated damages in the amount of the principal sums pleaded in the complaint of appellee, International Islamic Trading, Ltd. (IIT), was not error. However, the sums representing so-called "profits" awarded in the final judgment, without a trial thereon, are unliquidated damages and the award of these amounts is reversed.
IIT, a Bahamian corporation, with a registered office in Geneva, Switzerland, filed a complaint against Mahmoud and Tri-Corp charging that they failed to repay credit extended to them by IIT. Mahmoud is an Egyptian citizen with a United States visa doing business in Florida. Baraka International, an Egyptian establishment, is a sole proprietorship through which Mahmoud transacts personal business. Tri-Corp is a Florida corporation of which Mahmoud is the president, director, and the majority shareholder.
IIT finances international trade transactions and charges a "profit" for its financing based upon each individual transaction. IIT extended credit to Mahmoud, or Mahmoud and Tri-Corp, who are in the business of importing and exporting agricultural commodities and other goods, by opening, at their request, letters of credit at financial institutions in favor of Mahmoud or companies designated by him. Through the presentation of drafts appearing on their face to comply with the terms of the letters of credit requested by Mahmoud, funds were advanced for the benefit of Mahmoud by the institutions issuing the letters of credit. Pursuant to an agreement with the issuing banks, IIT has reimbursed the issuing banks for the amount of all such payments made on the letters of credit opened at the request and for the account of Mahmoud or Mahmoud and Tri-Corp.
In its complaint, IIT sought reimbursement for the amount of funds advanced under six letters of credit, together with the agreed upon profit. Mahmoud, alone, was responsible for funds advanced under four letters of credit and Mahmoud and Tri-Corp were responsible for funds advanced under two letters of credit. For some letters of credit, the agreed upon profit was 15%, for some it was 12%. IIT asserts in its brief that the "profit" referred to in these transactions, consisting of a fixed percentage of the funds advanced, computed on an annual basis, is virtually indistinguishable, for purposes of this appeal, from the American business concept of interest.
After the complaint was filed, and for approximately seven months, IIT sought discovery to no avail. Appellants failed to produce documents, attend depositions, and abide by court-ordered discovery. Answers to interrogatories were evasive and unresponsive. In one instance, Mahmoud failed to appear for a deposition and filed a motion for protective order asserting that he could not appear because he was in Egypt attending to other business and because he was complying with a Moslem holiday which required fasting. However, video tapes of Mahmoud taken during this period showed him working at the Tri-Corp offices carrying large boxes.
Upon motion by IIT, the trial court entered an order striking appellants' pleadings, finding that appellants had not made a reasonable good faith effort to comply with discovery. Regarding the incident involving Mahmoud's deposition, the court found that the grounds asserted in Mahmoud's motion for protective order were asserted in bad faith, that the motion was in fact a sham filed after-the-fact in an attempt to justify Mahmoud's refusal to appear, and that his refusal to appear was willful and evidenced a disregard for the authority of the court. The court concluded that Mahmoud's and Tri-Corp's conduct demonstrates bad faith on their part in responding to discovery requests, and in the assertion of unfounded arguments and objections. These derelictions, according to *981 the court, when viewed in their entirety, reflect a conscious disregard for the orders and authority of the court and the rules of civil procedure. The court found no credible evidence was submitted justifying their conduct or their failure to comply with the discovery rules or the orders of the court. The court recognized that an order striking pleadings is the most severe of all sanctions, but found it was justified because appellants' conduct in refusing to provide discovery amounted to a deliberate and contumacious disregard of the court's authority. Accordingly, the court entered a default in favor of IIT against Tri-Corp and Mahmoud on the causes of action stated in IIT's complaint, and a default in favor of IIT and against Tri-Corp and Mahmoud on their counterclaim.
IIT moved for final judgment after default, contending the complaint sought liquidated damages. IIT filed the affidavit of its documentary credit manager, listing the amounts remaining unpaid for each particular extension of credit and the amount of "profit" due. Because the extensions of credit alleged in counts 1 and 5 had been partially repaid, the affidavit reduced the amounts alleged to be owed on these counts. As to the other counts, the principal amounts listed in the affidavit were identical to the amounts listed in the complaint.
Appellants were served with copies of IIT's motion and affidavit and were provided with notice of the hearing. They presented no evidence contradicting IIT's affidavit. Thereafter, the trial court entered a final judgment ordering that IIT recover from Mahmoud the total unpaid principal and agreed profit amounts in the sum of $5,296,636.76, and from Tri-Corp, who was jointly responsible on two letters of credit, the sum of $622,133.95.
On appeal, appellants concede the discovery violations, but contend that it is not clear whether they were properly advised by their counsel concerning their obligations, and whether the ultimate fault was that of counsel or client.[1]
To justify reversal of a default imposed by the trial court for discovery violations, it would have to be shown on appeal that the trial court clearly erred in its interpretation of the facts and the use of its judgment and not merely that the court or another fact-finder might have made a different factual determination. Mercer v. Raine, 443 So.2d 944, 946 (Fla. 1984). In this case, the facts overwhelmingly support the action of the trial court. This case is distinguishable from Beasley v. Girten, 61 So.2d 179 (Fla. 1952), and Crystal Lake Golf Course, Inc. v. Kalin, 252 So.2d 379 (Fla. 4th DCA 1971), relied upon by appellants, as those cases involved trial counsels' singular failure to attend a pretrial conference and file a pretrial statement, and it was clear in those cases that the litigants were being punished for the transgressions of their lawyers. However, this case does not involve a single failure, but repeated and numerous failures to comply with discovery over a period of seven months. See Ferrante v. Waters, 383 So.2d 749 (Fla. 4th DCA 1980). Moreover, IIT did present evidence that appellants, rather than counsel, instigated the discovery delays. Counsel for Mahmoud admitted to the trial court that the motion for protective order  which sought relief from the scheduled deposition on the grounds of a Moslem holiday and Mahmoud's presence in Egypt  had been filed following discussions with his client.
Next, appellants contend that they were entitled to a jury trial on damages. However, a default admits the plaintiff's entitlement to liquidated damages due under the pleaded cause of action, but not unliquidated damages. Bowman v. Kingsland Development, Inc., 432 So.2d 660, 662-3 (Fla. 5th DCA 1983). The Bowman court explained the difference between liquidated and unliquidated damages thusly:
Damages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, i.e., from a pleaded agreement between the parties, by an arithmetical calculation or by application of *982 definite rules of law. Since every negotiable instrument must be "an unconditional promise or order to pay a sum certain in money" (see e.g., §§ 673.104(1)(b) and 673.106, Fla. Stat. (1981), actions for the sums directly due on negotiable instruments are, by definition, actions for liquidated damages. However, damages are not liquidated if the ascertainment of their exact sum requires the taking of testimony to ascertain facts upon which to base a value judgment.
Id.
The complaint sets forth with exactness the principal sums due under the letters of credit and appellants made no showing below nor on appeal that these principal sums are not due. Thus, the trial court properly awarded these principal sums as liquidated damages and appellants were not entitled to a jury trial to determine these damages.
However, the so-called "profits" on these transactions present a different matter. The complaint does not set forth the amount of profits due with exactness. While IIT asserts in its brief that the alleged profit is nothing more than an interest calculation, the complaint states the profit for IIT Financing is based on each individual transaction and not based upon interest. But even if these profits are considered interest on these transactions, the complaint fails to set forth the date each amount of money was advanced, so that it is impossible to calculate such "interest" with exactness from the pleaded allegations of the complaint. The meaning of these "profits" in international financial circles is not at all clear from the complaint nor is the method of calculating these "profits" set forth with exactness. Under the circumstances, we decline to rule that these profits should be considered an element of liquidated damages. Thus, the award of profits must be reversed.
At oral argument in this cause, counsel for IIT expressed a willingness to forego its claim to that amount of damages in this case consisting of the "profits," in order to avoid the necessity of a trial on this element of the damages. Accordingly, upon remand, IIT has the option of accepting a remittitur in the amount of the profits awarded in the final judgment rather than undergoing the expense of a trial on this element of damages, which IIT intimated at oral argument would not be recoverable from appellants in any event as their assets will be fully exhausted well before the principal sums due have been repaid.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
NIMMONS and ALLEN, JJ., concur.
NOTES
[1] Appellants' appellate counsel did not represent appellants in the proceedings below.