OPINION
DIANA GRIBBON MOTZ, Circuit Judge:
This case raises the question of whether a default judgment entered by a state court must be accorded full faith and credit when offered as the basis for a creditor’s claim in a subsequent federal bankruptcy proceeding. If a default judgment would be entitled to preclusive effect under state law it must be given such effect in bankruptcy claims allowance proceedings, absent express congressional intent to create an exception to the full faith and credit statute for such proceedings. We find that unless the default judgment is void, Ha-wai’i law would afford it preclusive effect. Hawai’i law is unsettled, however, on whether this judgment is void under Ha-wai’i Rules of Civil Procedure Rule 54(c) and thus not entitled to preclusive effect. We therefore certify the single question of whether the judgment is void under state law to the Supreme Court of Hawai’i.
I.
In 1991, Genesys Pacific Technologies, Inc. (Pacific) filed suit against Genesys Data Technologies, Inc. (Data) in Hawai’i trial court on a variety of claims related to a contract between Data, a seller of optical disk based imaging systems, and its franchisee, Pacific. The complaint did not request damages in a specific amount but claimed “[gjeneral, special, treble, and punitive damages in an amount to be determined at trial.” At the outset of the litigation Data filed an answer and engaged in discovery, but it eventually ceased defending the action.
Pacific moved for entry of a default and sent a notice of the motion to Data’s Maryland office. The Hawai’i court granted the motion. Pacific then moved for a default judgment against Data in the amount of $1,262,067.24 and again provided Data with notice of the motion. In support of that motion, Pacific submitted the affidavits of its attorney and of its president, Neil Al-per, who itemized the damages to include $252,067.24 in various incidental losses, $750,000 in lost profits, and $250,000 in punitive damages. Pacific also sought attorneys’ fees in the amount of $10,000. On *127 April 22, 1993, following a hearing that Data did not attend, the Hawai’i court entered a default judgment in the requested amount. Data did not file post-judgment motions, take an appeal, or in any other manner contest the default order or the amount of damages assessed in the Hawai’i courts. In 1994 Pacific enrolled the judgment in Maryland and filed various discovery requests to facilitate recovery on the judgment.
Data had closed its business operations in Maryland in 1992 when its secured lender foreclosed on all of its assets. In late 1993, however, Data and others filed suit against the Maryland law firm of Weinberg and Green for malpractice and breach of fiduciary duty. In May of 1996, after a jury awarded Data and the other plaintiffs over $25 million in compensatory damages, but before the jury could consider a punitive damage award, the plaintiffs settled with Weinberg and Green for an undisclosed amount.
Notwithstanding that settlement, Data refused to honor Pacific’s default judgment. Pacific initiated involuntary bankruptcy proceedings against Data and filed a claim in those proceedings based on its Hawai’i default judgment. Data and its principal John Meindl (collectively Data) objected to Pacific’s assertion of the claim, contending that the Hawai’i judgment was based on no real debt, was procured by fraud, and was void.
In determining whether to allow Pacific’s claim, the bankruptcy court found that Alper’s affidavit filed in support of the default judgment contained some fraudulent material representations involving an office lease, and thus disallowed that portion of the claim. However, the court allowed the remainder of the claim as well as pre-petition interest and additional attorneys’ fees. On appeal from the bankruptcy court, the district court allowed Pacific’s entire claim, concluding that the Full Faith and Credit Clause prevented the bankruptcy court from disturbing the Ha-wai’i judgment in any way.
Data now asserts that both the bankruptcy court and the district court erred in failing to disallow all claims based on the default judgment. We review the legal conclusions of the bankruptcy court and district court de novo and the bankruptcy court’s findings of fact for clear error.
II.
The district court correctly recognized that all federal courts must give full faith and credit to valid state court judgments. The court misspoke, however, in suggesting that the source of that mandate is the United States Constitution; the Full Faith and Credit Clause requires states to accord full faith and credit to the judgment of other states. U.S. Const. art. IV, § 1. Rather, a federal statute directs federal courts to afford state court judgments full faith and credit. See 28 U.S.C.A. § 1738 (West 1994); see also Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).
Section 1738 provides that state judicial proceedings “shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.” 28 U.S.C.A. § 1738. The Supreme Court has expressly held that the full faith and credit statute “directs a federal court to refer to the preclusion law of the State in which judgment was rendered.” Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Thus, § 1738 “does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.” Kremer, 456 U.S. at 481-82, 102 S.Ct. 1883.
*128 Federal courts are to follow a two-step process in determining whether § 1738 should apply in a particular situation. See Marrese, 470 U.S. at 381, 105 S.Ct. 1327 (citing Kremer, 456 U.S. at 466-68, 102 S.Ct. 1883). First, a federal court must look to state law to determine the preclusive effect of the state court judgment. Id. If state law would not bar relit-igation of an issue or claim decided in the earlier proceeding, then the inquiry ends— a federal court will not give the state court judgment preclusive effect either. If state law would afford the judgment preclusive effect, however, then a federal court must engage in a second step — it must determine if Congress created an exception to § 1738. Id. Only if “some exception to § 1738 applie[s]” can a federal court refuse to give a judgment the preclusive effect to which it is entitled under state law. Id. An exception “will not be recognized unless a later statute contains an express or implied partial repeal” of § 1738. Kremer, 456 U.S. at 468, 102 S.Ct. 1883.
Such repeals are rare. Indeed, in concluding that the Securities Exchange Act did not implicitly repeal the full faith and credit statute, the Supreme Court explained that, “[a]s a historical matter, we have seldom, if ever, held that a federal statute impliedly repealed § 1738 ... due to the relatively stringent standard ... that there be an ‘irreconcilable conflict’ between the two federal statutes at issue.” Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 380-81, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996) (quoting Kremer, 456 U.S. at 468, 102 S.Ct. 1883).
Without suggesting any explicit, or implicit, repeal of § 1738, Data nonetheless maintains that the res judicata principles codified in § 1738 somehow apply less stringently in the context of bankruptcy claims allowance proceedings. Citing the “paramount equitable powers of bankruptcy courts to prevent'the perpetration of fraud and collusion,” Data argues that, in determining whether to allow Pacific’s claim, the bankruptcy court should not have been barred from reviewing Data’s allegation that Pacific obtained the Hawai’i judgment through the submission of a fraudulent affidavit. Case law, however, does not support such a sweeping exception to § 1738.
We recognize that in the context of proceedings to determine the discharge-ability of debt, bankruptcy courts do have the discretion to hear certain claims of fraud that would otherwise be barred by res judicata. See Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). This discretion exists because in dischargeability proceedings, as the Brown court emphasized, the claim of fraud arises, not to dispute the validity of the underlying debt, but rather “to meet ... the new defense of bankruptcy which [the debtor] has interposed between [the creditor] and the sum determined to be due him.” Id. at 133, 99 S.Ct. 2205. But when a bankruptcy court is considering the validity of a claim upon which debt is based, no new special bankruptcy defense is involved and so res judicata applies as it ordinarily would. As the Court explained in Grogan v. Garner, 498 U.S. 279, 283-84, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), “the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code,” but “[t]he validity of a creditor’s claim is determined by rules of state law.” See also In re Ansari, 113 F.3d 17, 19 (4th Cir.1997).
Moreover, notwithstanding Data’s contentions, neither Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), nor Heiser v. Woodruff, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946), mandates a different analysis or sets forth special rules for determining the preclusive effect of a prior judgment in bankruptcy claims allowance hearings. In Pepper, the “dominant and controlling stockholder” of a corporation engaged in an intricate scheme to defraud creditors by arranging to have the corporation confess a judgment in his favor in state court. Id. at 297-99, 60 S.Ct. 238. The Supreme Court, in holding that *129 the bankruptcy court could review the validity of this judgment, spoke in broad terms of the bankruptcy court’s equitable power “to inquire into the validity of any claim asserted against the estate and to disallow it if it is ascertained to be without lawful existence.” Id. at 305, 60 S.Ct. 238.
Heiser explicitly and repeatedly cautions, however, that Pepper cannot be read to modify principles of res judicata in the claims allowance process. See Heiser, 327 U.S. at 737, 66 S.Ct. 853 (“Neither Pepper v. Litton, supra, on which respondents chiefly rely, nor the other cases which they cite, sustain the contention that the bankruptcy court, in passing on the validity of creditors’ claims, may disregard the principle of res judicata.”); id. at 736, 66 S.Ct. 853 (“principles of res judicata preclude the revival of the litigation in the bankruptcy court. Pepper v. Litton, supra, lends no support to the contrary view”); id. at 739-40, n. *, 66 S.Ct. 853 (“Pepper v. Litton ... affords no support for petitioner’s contention that the doctrine of res judicata is inapplicable in a bankruptcy proceeding”). Heiser thus renders untenable the argument that res judicata principles do not fully apply in the context of bankruptcy claims allowance proceedings.
Nor, contrary to Data’s suggestion, did Heiser hold that a bankruptcy court is to determine the preclusive effect of a prior state court judgment by applying federal res judicata law rather than the law of the state that issued the judgment. The Heiser Court had no occasion to address this question because the prior default judgment to which it afforded preclusive effect had been issued by a federal court. Of course, more recently, in a host of cases, the Supreme Court has addressed that very question and has directed that the full faith and credit statute requires a federal court to apply state res judicata law in determining the preclusive effect of a state court judgment. See, e.g., Matsushita, 516 U.S. at 373, 380, 116 S.Ct. 873; Marrese, 470 U.S. at 380, 105 S.Ct. 1327; Kremer, 456 U.S. at 481, 102 S.Ct. 1883.
In sum, the full faith and credit analysis mandated by the Supreme Court in Mar-rese and Kremer applies in bankruptcy claims allowance proceedings just as it does in most other federal judicial proceedings. Accordingly, we turn to that analysis.
III.
The first step in that full faith and credit analysis requires examination of state preclusion law to determine if a Hawai’i court would grant the default judgment res judi-cata effect. If a Hawai’i court would grant the judgment such effect, then the inquiry ends and the bankruptcy court must grant the judgment the same effect. Data contends a Hawai’i court would not give the judgment preclusive effect because it was based on no real debt, was procured by fraud, and was void.
A.
Like every other jurisdiction with which we are familiar, the Hawai’i law of res judicata mandates that a valid judgment of a court of competent jurisdiction bars “a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided.” See Quality Sheet Metal Co. v. Woods, 2 Haw.App. 160, 627 P.2d 1128, 1130 (Haw.Ct.App.1981) (citing Morneau v. Stark Enters., 56 Haw. 420, 539 P.2d 472 (Haw.1975)). Moreover, in Hawai’i “[t]his is true even if the [prior] judgment was obtained by default.” Id.
In other words, under Hawai’i law a valid default judgment constitutes “an adjudication, as a matter of fact, of the allegations contained in the complaint.” Medeiros v. First Ins. Co. of Hawaii, 50 Haw. 401, 441 P.2d 341, 343 (Haw.1968). Accordingly, we must reject Data’s conten *130 tion that because it assertedly never “breached any duty to” Pacific, the default judgment is supported by no real debt and as such is not entitled to preclusive effect. Pacific’s Hawai’i complaint contained numerous allegations that Data breached contractual and statutory duties to Pacific. The default judgment “adjudieate[d]” all of these allegations in Pacific’s favor, and Ha-wai’i preclusion law prevents relitigation of the allegations so “adjudicate[d].” Medeiros, 441 P.2d at 343.
B.
Alternatively, Data maintains that a Ha-wai’i court would disregard Pacific’s default judgment because the judgment was assertedly based on a fraudulent affidavit from Pacific’s president, Neil Alper. Ha-wai’i law, like federal law, does provide a remedy in this situation. A court can vacate a judgment based on “fraud ..., misrepresentation or other misconduct of an adverse party” if the aggrieved party moves for such relief “not more than one year after the judgment was entered.” See Haw. R. Civ. P. 60(b)(3); Haw. Dist. Ct. R. Civ. P. 60(b)(3); cf. Fed.R.Civ.P. 60(b)(3). As noted above, Data never sought this relief and the time for doing so expired long before Data lodged its objection to Pacific’s claim in the bankruptcy proceeding. For this reason, as Data seems to recognize and as Hawai’i preclusion law confirms, see Fuller v. Pacific Med. Collections, Inc., 78 Hawai'i 213, 891 P.2d 300, 305-06 (Haw.Ct.App.1995), Data is now barred from seeking to vacate the judgment under Rule 60(b)(3).
Data maintains, however, that its allegation that Alper tendered a false affidavit constitutes a claim of “fraud upon the court,”- and that a challenge to the judgment on that basis is still available to it under Hawai’i law. Data is correct that under Hawai’i law, as under federal law, a judgment may be attacked for “fraud upon the court” at any time. See Haw. R. Civ. P. 60(b); Fed.R.Civ.P. 60(b). The Supreme Court has long recognized the inherent equity power of courts to set aside a judgment whenever its enforcement would be “manifestly unconscionable” because of “fraud upon the court.” See Hazel-Atlas Glass Co. v. Hartfordr-Empire Co., 322 U.S. 238, 244-45, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) (citing numerous cases) (internal quotations omitted). The district court here understood that fraud upon the court could provide grounds to refuse to enforce the default judgment, but concluded that the fraud alleged did not justify such a collateral attack on the judgment.
Courts and authorities agree that “fraud upon the court” must be narrowly construed so that this “otherwise nebulous concept” does not “overwhelm the specific provision of 60(b)(3) and its time limitation and thereby subvert the balance of equities contained in the Rule.” Great Coastal Express, Inc. v. International Bhd. of Teamsters, 675 F.2d 1349, 1356 (4th Cir.1982) (citing numerous cases). Because the power to vacate a judgment for fraud upon the court is so free from procedural limitations, it “is limited to fraud that ‘seriously’ affects the integrity of the normal process of adjudication,” 12 James Wm. Moore et al., Moore’s Federal Practice ¶ 60.21[4][a] (3d ed.1999). For example, fraud upon the court includes fraud by bribing a judge, or tampering with a jury, or fraud by an officer of the court, including an attorney. See id. ¶ 60.21[4][a], [b].
Fraud between parties, however, “is not fraud on[the] court” even if it involves “[pjerjury by a party or witness.” Id. ¶ 60.21[4][c]; see also, e.g., United States v. Throckmorton, 98 U.S. (8 Otto) 61, 66, 25 L.Ed. 93 (1878) (“The doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence”); Geo. P. Reintjes Co. v. Riley Stoker Corp., 71 F.3d 44, 49 (1st Cir.1995) (“perjury alone, absent allegation of involvement by an officer of the court ... has never been sufficient [to constitute fraud upon the court justifying collateral *131 attack]”) (citing numerous cases); Great Coastal Express, 675 F.2d at 1357 (“courts confronting the issue have consistently held that perjury or fabricated evidence are not grounds for relief as ‘fraud on the court’ ”) (citing numerous additional cases).
Because the district court concluded that Hawai’i courts had not determined what conduct was sufficient to justify collateral attack on a judgment as fraud upon the court, it turned to federal law. Applying the well-established federal standard set forth above, the court held that Alper’s fraudulent affidavit did not constitute such fraud upon the court. On appeal, Data does not contend that it has alleged conduct that would provide a basis to vacate the default judgment under federal law. Rather, Data maintains that Hawai’i has established its own standard for fraud upon the court sufficient to justify a collateral attack, and that a party’s false affidavit meets this standard. For this contention Data relies exclusively on Kawamata Farms, Inc. v. United Agri Products, 86 Hawai'i 214, 948 P.2d 1055 (Haw.1997), and Southwest Slopes, Inc. v. Lum, 81 Hawai'i 501, 918 P.2d 1157 (Haw.Ct.App.1996). Careful review of these cases, however, reveals that neither sets forth a standard in any way different from the well-established federal standard.
The question addressed in Kawamata was whether a prevailing party could move under Haw. R. Civ. P. 60(b)(3) to obtain attorneys’ fees and costs for “unprecedented discovery fraud” perpetuated by its opponent. 948 P.2d at 1096-98. The Ha-wai’i court recognized that federal courts have held that the identical federal rule does not provide a vehicle for such relief. The federal rule is available only to a losing party to set aside a judgment, not to a prevailing party to obtain “affirmative relief ... in the form of additional attorneys’ fees and costs_” Id. at 1097. The Kawamata court concluded that it would depart from the federal interpretation and permit a prevailing party to move under Haw. R. Civ. P. 60(b) for additional attorneys’ fees and costs in view of the “unusual, unique example of unprecedented discovery fraud” perpetrated by the losing party. Id. at 1098. In the course of its discussion the Kawamata court did characterize this “egregious” discovery fraud as “fraud upon the court,” but, of course, it had no occasion to determine whether the fraud was sufficient to permit vacatur of a prior judgment. Id. The Ka-wamata court did not set aside any judgment; it simply permitted the prevailing party to use Haw. R. Civ. P. 60(b) to obtain additional attorneys’ fees and costs. Kawamata is, therefore, inapposite here.
By contrast, Southwest Slopes is on point but provides no support for Data’s contention. In Southwest Slopes, the court recognized “the possibility that Plaintiffs used fraud upon the court” in obtaining a judgment. Id., 918 F.2d at 1167. For this reason the Hawai’i Intermediate Court of Appeals vacated an order granting summary judgment and remanded the case for further proceedings. See id. However, contrary to Data’s suggestion, the asserted fraud in that case was not simply a party’s false affidavit but also the fraudulent affidavit and letter of Southwest Slopes’ attorney. Id. As we have noted above, fraud perpetuated by an officer of the court, including an attorney, constitutes fraud upon the court under well-settled federal law. See 12 Moore et al., supra, ¶ 60.21[4][b]. Indeed, the Supreme Court in the leading fraud upon the court case emphasized that the fraud at issue there was “not simply” the perjury of a witness, but rather the participation in the fraud of a lawyer for one of the parties. See Hazel-Atlas, 322 U.S. at 245-46, 64 S.Ct. 997.
Thus, rather than establishing a new and more lenient state standard for fraud upon the court, Southwest Slopes indicates that Hawai’i law on this question is consistent with federal law. This conclusion is hardly surprising given the deference Hawai’i courts generally accord judicial interpretations of Fed.R.Civ.P. 60(b) *132 when construing Hawaii’s identical rule. See Harada v. Burns, 50 Haw. 528, 445 P.2d 376, 380 (Haw.1968) (stating that interpretations of the Federal Rules of Civil Procedure are “highly persuasive”). Indeed, in light of the care the Kawamata court took in detailing its departure from the federal interpretation of Haw. R. Civ. P. 60(b), we believe it very unlikely that a Hawai’i court would sub silentio reject the federal standard for fraud upon the court.
In any event, neither Kawamata nor Southwest Slopes establishes a more lenient standard. Kawamata does not address the issue, and the holding in Southwest Slopes is entirely in accord with well-settled federal law. Thus, Hawai’i case law does not suggest that Hawai’i courts would depart from the standard outlined by the Supreme Court more than fifty years ago. Data’s allegation that Alper submitted a fraudulent affidavit does not, as even Data implicitly concedes, constitute fraud upon the court under that standard.
C.
Finally, Data contends that Ha-wai’i courts would not accord the default judgment preclusive effect because it is void under Haw. R. Civ. P. 54(c) (West 1999).
In its complaint, Pacific sought “[general, special, treble, and punitive damages in an amount to be determined at trial.” After obtaining the default, Pacific moved for a default judgment. In that motion, Pacific specified its damages and submitted affidavits in support of its request for $252,-067.24 in incidental damages, $10,000 in attorneys’ fees, $750,000 in lost profits, and $250,000 in punitive damages, for total damages of $1,262,067.24. After a hearing, which Data apparently did not attend, the Hawai’i court granted a default judgment for the entire amount. Data maintains that Pacific, “did not request a specific amount of damages and therefore the default judgment violated Hawaii Rule of Civil Procedure 54(c).”
Hawai’i Rule of Civil Procedure 54(c), in language identical to Federal Rule of Civil Procedure 54(c), provides:
Demand for judgment. A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment....
Haw. R. Civ. P. 54(c). The Supreme Court of Hawai’i has interpreted this rule on several occasions. See, e.g., Bank of Hawaii v. Horwoth, 71 Haw. 204, 787 P.2d 674 (Haw.1990); Matsushima v. Rego, 67 Haw. 556, 696 P.2d 843 (Haw.1985); Stafford v. Dickison, 46 Haw. 52, 374 P.2d 665 (Haw.1962). But as the parties concede, no Hawai’i court has identified the circumstances under which a default judgment is “different in kind from or exceeding] in amount that prayed for in the demand for judgment.”
Nor is there unanimity among other jurisdictions that have addressed the issue. Indeed, our research reveals that Fed.R.Civ.P. 54(c) and its many state analogues have led to a dizzying array of judicial decisions addressing the precise meaning of the requirement that a default judgment may not “exceed in amount that prayed for in the demand for judgment.” See, e.g., 46 Am.Jur.2d Judgments § 312 (1994). When a complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages. See, e.g., Compton v. Alton Steamship Co., 608 F.2d 96, 104 (4th Cir.1979); Producers Equip. Sales, Inc. v. Thomason, 15 Kan.App.2d 393, 808 P.2d 881, 886 (Kan.Ct.App.1991). The rationale is that a default judgment cannot be greater than the specific amount sought because the defendant could not reasonably have expected that his damages would exceed that amount.
When a complaint demands a specific amount of damages and unspecified additional amounts, or simply demands unspecified amounts to be proven at trial, however, courts have not followed a uniform *133 approach. Some have reasoned that as long as the defendant receives notice that some damages may be awarded, general allegations of actual damages suffice to support a default judgment. These courts have upheld the entry of a default judgment in excess of a specific amount of requested damages, see Henry v. Sneiders, 490 F.2d 315-17 (9th Cir.1974); Tarnoff v. Jones, 17 Ariz.App. 240, 497 P.2d 60, 64-65 (Ariz.Ct.App.1972); or the entry of a default judgment for money damages when the complaint requests no specific amount. See Melehes v. Wilson, 774 P.2d 573, 579-80 (Wyo.1989); Dairyland Ins. Co. v. Richards, 108 Ariz. 89, 492 P.2d 1196, 1198 (Ariz.1972) (in banc); Floyd v. First Union Nat’l Bank of Georgia, 203 Ga.App. 788, 417 S.E.2d 725, 727-28 (Ga.Ct.App.1992). Other courts have held that by “enlarging] the judgment amount” from that prayed in the complaint a default judgment based on general allegations of damages “undermines the fairness of the proceedings” and so violates the rule. See Thorp Loan & Thrift Co. v. Morse, 451 N.W.2d 361, 364 (Minn.Ct.App.1990); see also Growth Properties, Inc. v. Klingbeil Holding Co., 419 F.Supp. 212, 220-21 (D.Md.1976); Mahmoud v. International Islamic Trading, Ltd., 572 So.2d 979, 982 (Fla.Dist.Ct.App.1990); Wiggins v. Todd, 296 S.C. 432, 373 S.E.2d 704, 705-06 (S.C.Ct.App.1988); Rauscher v. Albert, 145 Ill.App.3d 40, 99 Ill.Dec. 84, 495 N.E.2d 149, 151 (Ill.App.Ct.1986); Darnell v. Denton, 137 Ariz. 204, 669 P.2d 981, 983-84 (Ariz.Ct.App.1983).
We have been persuaded that, for this issue of first impression, it is not appropriate to substitute our judgment on the interpretation of Haw. R. Civ. P. 54(c) for that of the Supreme Court of Hawai’i. Accordingly, in the accompanying order we respectfully certify to the Supreme Court of Hawai’i, pursuant to its discretionary authority under Hawai’i Rules of Appellate Procedure Rule 13, see, e.g., Allstate Ins. Co. v. Alamo Rent-A-Car, Inc., 137 F.3d 634 (9th Cir.1998); Smith v. Cutter Biological, Inc., 911 F.2d 374 (9th Cir.1990); Kinoshita v. Canadian Pac. Airlines, Ltd., 68 Haw. 594, 724 P.2d 110 (Haw.1986), after certification, 803 F.2d 471 (9th Cir.1986), the following question:
Under Rule 54(c) of the Hawai’i Rules of Civil Procedure, is Pacific’s default judgment for $1,262,067.24 void when Data received notice of Pacific’s complaint requesting “[g]eneral, special, treble, and punitive damages in an amount to be determined at trial” before the entry of any default, and Data received notice of the specific amount requested and itemization of damages claimed after the entry of the default but before the entry of judgment?
IV.
In sum, if Pacific’s default judgment violates Haw. R. Civ. P. 54(c), then it is void and not entitled to res judicata effect in federal bankruptcy court. The accompanying certification order shall first be released to counsel, who shall have the right within fifteen days to suggest changes to the statement of facts so that there may be full and complete certification to the Supreme Court of Hawai’i of the question proposed. We reserve the right to modify this opinion in light of the comments received. .

QUESTION CERTIFIED